# The Chicago, Burlington & Quincy Railroad Company

## *v.*

# Leannah L. Dunn.

1. MARRIED WOMEN—*what is "property," within the act of* 1861. The right of action accruing by reason of personal injuries received by a married woman from the negligence of a railroad company, is property, and coming to her from a source other than her husband, and, in good faith, it is her separate property, and comes under the operation of the act of 1861.

2. SAME—*whether a married woman may sue alone for such injuries.* Such right of action being the separate property of the wife, she may sue alone to recover damages for the injury received.

3. SAME—*power of the husband in respect thereto.* The right of action in such case being in the wife, the husband cannot, without her consent, adjust it or release it.

4. But where an action for the same cause had been commenced in the joint names of the husband and wife, and the former compromised the suit, and entered into an agreement to dismiss it, and release the cause of action upon receiving a certain sum from the defendant, it appearing that in so doing the husband acted as the agent of the wife, it was held such release operated as a bar to a subsequent action brought in her own name.

5. CONSTRUCTION OF STATUTES. The rule in construing remedial statutes, though it may be in derogation of the common law, is, that every thing is to be done in advancement of the remedy that can be done consistently with any fair construction that can be put upon it.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Messrs. FROST & TUNNICLIFF, Mr. G. C. LANPHERE and Mr. A. M. CRAIG, for the appellants.

Messrs. KITCHELL & ARNOLD, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court·

An injury having resulted to the plaintiff in this action, Leannah Dunn, by the locomotive of the defendants, at a street crossing in the town of Galesburg, her husband, Marvin R. Dunn, jointly with herself, brought an action to recover damages therefor, in the circuit court of Knox county, at the June term, 1867. At the same term a similar action was brought against the railroad company, by George E. Dunn, suing by Reuben Hawk, his next friend, for an injury received at the same time, by the same locomotive. Pending these actions, and at the June term, 1867, the following agreement was entered into: "It is agreed that the Chicago, Burlington & Quincy Railroad Company will pay to Marvin R. Dunn, Leannah Dunn and George E. Dunn, the sum of one thousand dollars within three days from this date, or as soon as the said M. R. Dunn can attend to it, and upon payment of the same, the above suits against the said railroad company are to be dismissed, and the said plaintiffs are to give the said company receipts in full of all damages. June 1, 1867."

M. R. Dunn, on the 3d of June, executed to the company a receipt for the amount specified in this agreement.

At the February term, 1868, Leannah Dunn commenced her action in the Knox circuit court, to recover damages for the same injuries which were the subject matter of the suit in which she and her husband were plaintiffs, and compromised by the payment to her husband of one thousand dollars, in pursuance of the above agreement.

To this action the defendants pleaded the above agreement, and claimed that the payment of this money was in full satisfaction and discharge of the grievances in the declaration mentioned, and which M. R. Dunn accepted in full discharge and satisfaction, and dismissed the suit.

To this plea the plaintiff put in six replications, admitting the identity of the cause of action, but denying that she accepted the money in satisfaction of her cause of action. She further replied that the first suit was instituted and carried

on by her husband, at his own option, without consultation with her and without her authority and consent; that she did not authorize the commencement or settlement of that suit by her husband; that the same was done for his sole benefit, and that she has never received any part of the said money.

The sixth replication alleged that the money paid to M. R. Dunn in satisfaction of the grievances complained of was paid to him upon consideration that she, the plaintiff, should accept the same and acknowledge the receipt thereof by proper receipt executed to the defendants, which she refused to do, and did not accept the money, or any part thereof.

Issues were made up on these allegations, and there was a trial by jury, and a verdict for plaintiff of two thousand nine hundred and thirty-three dollars and thirty-three cents in damages.

A motion for a new trial was overruled, and a judgment rendered on the verdict.

To reverse this judgment, the defendants bring the record here by appeal, and assign various errors.

The principal point made on the record is as to the effect of the agreement of June 1, 1867, and of the receipt by M. R. Dunn of June 3d, of one thousand dollars. The question is, do they bind this plaintiff and bar her action?

Another question made is, as to the right of the plaintiff to maintain this action in her own name.

As to this question, it is conceded, by the common law, she could not maintain it.

Appellee's counsel contend that the act of 1861, called "the married woman's act," has so changed the common law, in respect to *femes covert*, as to authorize the action by the wife alone.

The act of 1861 was evidently designed to relieve married women from some of the disabilities the common law had, for centuries, imposed upon them. By force of that law, the maxim obtained, that husband and wife are one person, and although property be the wife's, the husband is the keeper of it, being the head of the wife. Co. Lit. 112.

These maxims were law in this State up to the comparative modern date of February 21, 1861, at which time it was enacted by the Legislature that " all the property, both real and personal, belonging to any married woman as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires, in good faith, from any person other than her husband, by descent, devise, or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain, during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried ; and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

The rule in construing remedial statutes, though it may be in derogation of the common law, is, that everything is to be done in advancement of the remedy that can be done consistently with any fair construction that can be put upon it.

Impressed with the force of this canon of interpretation, this court, soon after the enactment of this statute, not in terms giving to the wife the power to sue alone in matters affecting her separate property, held that, to render the act operative and effectual for the purposes intended by it, it was indispensable, she should have this right, and accordingly sustained an action of replevin brought by a married woman to restore to her the possession of personal property, being her own separate property, which had been seized by a constable, on an execution against her husband. *Emerson* v. *Clayton*, 32 Ill. 493. It was there said, the right to her property being vested in the wife, by the statute, it must, if the act is to be enforced, so remain until she consents to dispose of it, for this right includes full dominion over it; when these rights are the only rights affected, on the well-established principles of law, she must bring suit for an invasion of them.

The legislature designed to make, and did make, a radical change in this respect in the condition of a *feme covert.* Having the sole control of her property, there is no necessity of joining her husband in an action to recover it, or for trespasses upon it. The very object of the statute was to keep her separate property out of the control of her husband. If this were not so, the act would be futile and of no effect. The husband, for purposes of his own, might refuse to join in an action with his wife. He might connive with others to dispossess her of her property. The right of sole control over the separate property of the wife by her, includes the power to do whatever is necessary to the effectual assertion and maintenance of that right.

If, then, it can be established that the right of action for this injury to the wife, is property, as it came to her from a source other than her husband, and in good faith, then it was her separate property, and comes under the operation of the act of 1861. The statute is very comprehensive—*all* property.

Chancellor Kent, in his commentaries, says another leading distinction in respect to goods and chattels, is the distribution of them into things in possession and things in action. The latter are personal rights, not reduced to possession, but recoverable by suit at law. Money due on bond or other contract, damages due for breach of covenant, for the detention of chattels or *for torts*, are included under this general head or title of things in action. Comstock's Ed. 2 Kent's Com. 432, under the head, " of the nature and various kinds of personal property."

A right to sue for an injury, is a right of action—it is a thing in action, and is property, according to this authority. Who is the natural owner of this right? Not the husband, because the injury did not accrue to him; it was wholly personal to the wife. It was her body that was bruised; it was she who suffered the agonizing, mental and physical pain. Indirectly, it is true, the husband was an injured party, also, during her disabilities, in deprivation of his comfort by

reason thereof, and by the further reason of his responsibilities for the charges for her care. For these he can undoubtedly sue and recover such damages as he may prove.

Why is not this right of action, property? Law commentators of distinguished ability say it is, and with good reason, speaking according to well recognized principles. It is true, it is a right which cannot be transferred to another, and dies, with the person entitled to it, but it is none the less property in that person, while living, which can be claimed, so long as the bar of the statute of limitations can not be interposed.

Would the purposes and object of the act of 1861 be carried out, indeed, could they be, should this court hold, in view of the decision in *Emerson* v. *Clayton*, that the wife could not sue alone for an injury to her person? Suppose she is slandered, and the husband chooses to pass the slander by, though he knows his wife is withering and agonizing under its influence? Suppose she is assaulted and beaten, and the husband, for causes satisfactory to himself, but having no foundation in reason or justice, refuses to prosecute the wrong doer? Can it be denied the wife has, in both these cases, a property in the right of action the law gives; that it is her separate property, and that she acquired it during coverture? It is conceded, she may sue for an injury to her horse, being her separate property, or bring her action of trespass for despoiling her of an earring, or any other personal ornament of value, but for grievous injuries to her person, she must await the consent of her lord and master. This is not, in our judgment, in accordance with the spirit of the act of 1861.

We are satisfied this right of action is property, included in the words, " all property;" it was the separate property of the wife, acquired during coverture, and from a source other than her husband, and she alone can control it.

The case of *Burger and wife* v. *Belsley et al.* 45 Ill. 72, cited by appellee, is, so far as it goes in this direction, not adverse to the doctrine we have endeavored here to establish. That was an action of trespass for personal injuries to the

266          C. B. & Q. R. R. Co. *v*. Dunn.          [Sept. T.,

Opinion of the Court.

wife. The action was commenced in the joint names of the husband and wife, and after a separation had taken place between them, the court would not allow a dismissal of the suit to her prejudice, or burden its prosecution by conditions onerous to the wife.

The right of action being in the wife, the question arises, could the husband, without the consent of his wife, adjust it or release it?

That he could not, of his own mere motion, release it or compromise it, is undeniable, on principle and authority. *Emerson* v. *Clayton, supra*. This court has, however, repeatedly held that the husband may be the agent of the wife in the management of her business, and in the employment of her capital, and but slight evidence of such agency will, ordinarily, be required.

For the purpose of establishing the agency of the husband in bringing, conducting and compromising the action brought in their joint names against the railroad company, appellants proved that the husband had, on a former occasion, instituted a suit in the name of himself and wife for the recovery of some property belonging to the latter, and prosecuted the same to a final recovery, he acting as the agent of his wife, and in the prosecution of that suit, had employed the services of the attorney, who, as attorney of appellants, had effected the compromise of the suit in which the agreement in question was made. This attorney had, therefore, good ground for supposing, inasmuch as the husband had acted as the agent of his wife in prosecuting the suit in which he was attorney and counsel for them, that the agreement to dismiss the action on the payment by the appellants of one thousand dollars was with her approbation and consent.

It is in proof, that she knew a joint action had been brought against appellants for the injury she had received; that she made no objection to bringing such suit; that she was well informed her husband was conducting the suit, employing attorneys for such purpose, and it is clearly to be inferred she

knew her husband was about to settle the suit. From the close and confidential relations existing between them, it is next to impossible she should not have known all about it. From all this, the jury should have inferred authority on the part of the husband to make this settlement as the agent of his wife, and sustained the plea of the defendants. It would be the height of injustice that the wife should now be allowed to repudiate the agency of her husband. She, by her silence, when a word from her would have prevented it, has enabled her husband to get possession of a large sum of money from the defendants, and which he had in his possession more than one month before she made any objection, and which he still has in his possession, which appellants have paid in good faith, and no portion of which, so far as the record shows, can be recovered back. In conscience, she ought to be estopped from prosecuting this claim, the injury having been fully atoned for by the defendants, with her knowledge and consent.

The objection, that a portion of the money paid on settlement was to be paid to George E. Dunn, can not invalidate the settlement, so far as Leannah Dunn is concerned. The settlement is binding upon her, through the agency of her husband, irrespective of the portion which may be her due, on the adjustment of the suits by the several parties to them.

We refrain from noticing any other points made in the case. The settlement of the first suit being with the knowledge and consent of this plaintiff, the second special plea of defendants being sustained, bars her action.

The finding of the jury is against the weight of evidence, and a new trial must be had, and for that purpose the judgment is reversed and the cause remanded.

*Judgment reversed.*