FRENCH, ET UX. *v.* NATIONAL REFINING COMPANY

[No. 27,340.    Filed April 2, 1940.    Rehearing denied April 30, 1940.]

122

*Beasley, O'Brien, Lewis & Beasley,* of Terre Haute, for appellants.

*Hays & Hays, John S. Taylor* and *J. Olias Vanier,* all of Sullivan; and *Aikman, Miller & Causey,* of Terre Haute; and *James E. Babcock,* of Indianapolis, for appellee.

FANSLER, J.—This is an action by the appellants, who are husband and wife, to recover rent from the appellee, under a lease by which the appellee held real estate which the appellants owned as tenants by the entireties. The appellee answered in general denial and by two affirmative paragraphs. The first affirmative paragraph alleges that the plaintiffs were partners, and that the husband executed a contract, on behalf of himself and his wife, canceling the lease. The second affirmative paragraph alleges that the husband and wife were partners, and that a contract was entered into between the defendant and the husband; that said contract referred to the lease upon the property owned by the plaintiffs as tenants by the entireties; and that by the subsequent contract with the husband the lease was superseded and canceled; that the subsequent contract was with the partners; that both the husband and wife participated in the management of the partner-

ship business; and that, because of the action of the husband in entering into the contract, and the acquiescence of the wife, and the acceptance of benefits under the subsequent contract, the plaintiffs are estopped from claiming rental under the lease. There was a reply in general denial. The cause was submitted to a jury. At the conclusion of the evidence, upon motion of the defendant, the court instructed the jury to return a verdict for the defendant. The plaintiffs filed a motion for a new trial, which was overruled.

The giving of the peremptory instruction is not assigned as error. The only assignment is based upon the overruling of the motion for a new trial, and the only contention presented is that the verdict of the jury is not sustained by sufficient evidence and that it is contrary to law.

The appellee timely moved to dismiss the appeal upon two grounds. It is first asserted that, since error is not predicated upon the giving of the peremptory instruction, no question is presented; that, where a peremptory instruction is given, there is no available error in overruling a motion for a new trial upon the ground that the verdict is not supported by sufficient evidence and is contrary to law. This position is not well taken. There was a verdict by the jury, and, unless there was substantial evidence to support it, it is an unlawful verdict, regardless of whether it was directed by the court or returned in the discretion of the jury. Waiver of error upon the giving of the instruction has merely placed the appellants in the more disadvantageous position of showing that there was no substantial evidence to sustain the verdict of the jury, whereas, if error had been assigned upon the giving of the peremptory instruction, it would have been sufficient to show that there was some substantial

evidence upon which the jury might have returned a contrary verdict for the appellants.

The appellee also contends that, because the transcript does not show a record entry of the impaneling of a jury or a submission of the cause to the jury for trial, there is no showing that a trial was ever had. But the record does show that evidence was introduced and that the jury returned a verdict. This is sufficient. *Troxel* v. *Thomas et al.* (1900), 155 Ind. 519, 58 N. E. 725. The motion to dismiss is overruled.

The evidence shows that on March 3, 1933, the parties entered into a written lease for a period of five years; that there was located on the real estate a building which was used as a residence, a restaurant or lunchroom, and a gasoline filling station; that the appellants lived in the building; and that the husband operated the lunchroom and filling station, and that the wife assisted in these operations. There is no evidence that the wife had any interest in the business enterprises operated on the premises, except that she had access to the cash register for family expenses and her own expenses. The net proceeds of the business were deposited in the bank, from time to time, in the husband's name, and the wife did not have access to these deposits. The appellant husband operated the filling station upon the leased premises under a commission contract of some sort with the appellee. The appellee paid the rent on the premises up to the 31st day of July, 1933, and thereafter paid no rental. Rental was at the rate of one cent per gallon upon all gasoline delivered to the premises during the month. There is a provision that the lessee may install fixtures and equipment upon the premises; that they shall be used as a gasoline filling and automobile service station, and that the

lessee may cancel the lease upon thirty days' written notice. It is conceded that there was no written notice of an election by the appellee to cancel the lease.

In support of the answers, evidence was introduced disclosing that on the 29th day of June, 1933, agents of the appellee came to the property in question with two prepared contracts. The first of these was a contract leasing certain personal property. The parties to it were the appellee and Earl French. By its terms Earl French leased from the appellee certain pumps and equipment at a rental of $1 per year. This contract provides for cancellation at the option of either party on thirty days' written notice before the end of any annual period.

At the same time another contract was entered into, in which Earl French and the appellee are named as parties and which was signed by them. This contract provides for the purchase of gasoline, oils, and greases from the appellee by Earl French, and for certain discounts from the market price, which may be changed from time to time, but which shall not be less than two cents per gallon for the better grades, and one cent per gallon for a lesser grade, of gasoline. There is a provision in this contract that: "This agreement cancels and supersedes any and all prior agency, Lease and Sales Contracts and amendments thereof." This is the clause upon which the appellee seems to rely as an agreement to cancel the real estate lease. But neither this contract nor the personal property lease, signed on June 29th, and which was to become effective on July 29th, made any mention of Mrs. French or the lease to the real estate owned by the entireties. In the contract for the purchase of gasoline and oil it is recited that Earl French expressly represents that he is entitled to occupy and

control the real estate, which was the subject of the lease between the parties, and it is described in full. But the contract was prepared by the appellee before it was submitted to Earl French, and the language is appellee's language. At the time the contract was prepared, not Earl French, but the appellee controlled the property under its lease from the appellants. Earl French occupied it under a contract with the appellee, the nature of which is not disclosed. The appellee, with full knowledge of all the facts, was bound to know that its lease with the husband and wife could only be canceled by written notice as provided in the lease, or by agreement, and that both the husband and wife were necessary parties to an agreement to terminate the lease. If it in fact considered that either of the contracts of June 29th contained an agreement to terminate the lease upon the real estate, it was bound to know that it could not become effective without the signature of both Mr. and Mrs. French. It therefore knew that anything it had written into the contract, in the nature of a representation by Earl French that he was entitled to occupy and control the real estate, was contrary to the facts, unless his occupancy and control were under appellee's lease and under his contract with appellee, or unless and until the appellee accomplished a termination of its lease, and thereafter Mrs. French should agree that Earl French should be entitled to operate and control the premises; and appellee cannot be heard to say that it was deceived by the representation in the contract. The provision for canceling and superseding prior agency, lease, and sales contracts must be construed as referring to contracts between the parties, that is, Earl French and the appellee. No such contracts are in evidence, but, since the appellee had held a lease upon the premises for

more than three months, and Earl French had operated a filling station on the premises during that time, under some arrangement by which he handled the appellee's products, it must be concluded that there was some sort of a sublease and sales or agency contract between Earl French and the appellee. Appellee's contention that this provision for cancellation was intended to effect a cancellation of the real estate lease made by the appellants as husband and wife, concerning the property they held by the entireties, is entirely without support in the facts; and, since the facts were well known both to the appellee and the appellants, and no mistake of fact or misrepresentation is asserted, there is no basis for re-forming or adding to the contracts, nor for construing them as superseding or canceling a contract which could not be effected without the assent of Mrs. French. Nor is there any basis in the facts adduced to support the allegations of the answers and the appellee's contention that the appellants were partners, or that the contracts were made by them as partners. If the appellee had intended that a partnership composed of the husband and wife should be a party to the contracts, it is most reasonable to assume that it would have so written the contracts. But they were not so written, and there is absolutely no basis for concluding that the appellants were partners or that they misrepresented the facts or led the appellee to believe that there was a partnership. The fact that a wife living with her husband in the building in which his business is located assists him in the operation of his business, and has access to the funds thereof for family expenses and her personal expenses, without a showing that she has an interest in the profits as a partner, falls far short of being sufficient to establish a partnership relation.

The appellee concedes that it did not exercise its option to cancel the lease upon the real estate by giving written notice. It relies entirely upon the contracts as an agreement that the lease should be abrogated, and upon an estoppel against the appellants to deny that the lease was abrogated by the contracts. If the lease was abrogated by the contracts, there must have been an agreement to that effect upon the day the contracts were made, since no subsequent contract is alleged. It has been pointed out that there is no evidence of any such agreement. The estoppel theory seems to be based upon the contention that the appellant Hallie B. French was present at the time the contracts with her husband were made; that she acquiesced in his entering into the contracts; and that she "accepted the benefit thereof, including increased profits on gasoline sold," and "served notice of the cancellation of same." The appellee's agents testified that Mrs. French was not asked to sign the contracts, and this seems consistent with their conduct in preparing them to be signed by Mr. French alone. They testified that they explained, in the presence of both of the appellants, that the contracts, if signed, would have the effect of canceling the lease on the real estate. In cross-examination one of them was asked: "As a matter of fact you urged them to sign this, didn't you?" And he answered: "Yes, sir." This is inconsistent with their testimony that they did not ask Mrs. French to sign. It may be true that, if both of the appellants had signed the contracts, there might have been some basis for the contention that they had the effect of canceling the lease. One of the appellee's agents testified, in chief, that: "Mrs. French said she didn't like to keep signing contracts all the time. That she

previously signed a contract just a few months before and she would have to leave this up to Mr. French. Q. Did she at any time refuse to sign the contract herself? A. We didn't ask her to sign." But it is difficult to avoid concluding, from Mrs. French's statement, that she believed she was being asked to sign the contracts and that she was refusing and giving a reason. One of the witnesses testified that Mrs. French expressed no objection to the signing of the contracts by Mr. French. But, if she understood the contracts, and the agents said they had been explained in her presence, it may well be that she was content to have Mr. French sign them, or that she had no opinion as to the advisability of his signing, or that she quite approved of his signing them. This would not commit her to an agreement that she should be bound by the contracts nor to acquiescence in the construction put upon them by the appellee's agents to the effect that their signing would abrogate the lease on the real estate, if in fact they meant that the signing by Mr. French alone would have that effect. The testimony referred to is that most favorable to the appellee, and is the most that can be relied upon as indicating acquiescence by Mrs. French. But this does not show acquiescence in an understanding that she and her husband were operating the business as partners, nor does it indicate acquiescence in any understanding that the signing of the contracts by her husband would abrogate the lease on the real estate, or exempt the appellee from the payment of rental thereunder. In *Lash* v. *Rendell* (1881), 72 Ind. 475, 480, 481, this court quoted with approval the statement that: "Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not to be taken by argument or inference." In Bigelow on Estoppel, 6th Ed., p. 661,

it is said: "It follows that it is not enough to raise an estoppel that there was an opportunity to speak which was not embraced; there must have been an imperative duty to speak." Appellee's agent testified to the statement of Mrs. French, which may reasonably be construed as a statement that she would not sign the contract. This is far from the silence that may be construed as acquiescence in, and an agreement to, a proposed contract. If it were not so, there would be little safety in written leases, for a statement of the lessee, in the presence of the lessor, that certain acts would constitute a cancellation and abrogation, might bind the lessor in the absence of a vigorous dissent and ability to prove it in court. There is the further contention that Mrs. French accepted benefits under the contracts, by which it is asserted the lease was canceled. There is absolutely no evidence that she received any benefits. There is no positive evidence that there were any benefits, but if there were they accrued to the husband, and not to Mrs. French. A wife's interest and rights in property held by the entireties may not be taken from her without her consent because of some profit or benefit flowing to her husband.

On June 12, 1935, the following written notice, signed by Earl French and Hallie B. French, was sent to the appellee: "You are hereby notified that I wish to terminate my contract 30 days from today as per our agreement in June, 1933." On its face, this notice refers to the contracts between Earl French and the appellee, since those were the only contracts entered into between any of the parties in June, 1933. The notice is in the singular, and was an appropriate notice for Earl French to have given. Why Hallie B. French signed it is not disclosed. If the person who prepared the notice had considered that the contracts

of that date were the contracts of both Mr. and Mrs. French, it would seem that "we," rather than the singular "I," would have been used. But, whatever the reason for her signature, it clearly is not a basis for an estoppel, since it was not executed until long after the contracts were made, and it is too indefinite and vague to establish that a partnership existed at the date of the June contracts, in the face of positive, uncontradicted evidence to the contrary. It is difficult to take appellee's partnership theory seriously in view of its having prepared the contracts without a suggestion of such a relationship.

The contract of rental was proven. The amount due under it, something more than $1,000, was established. There is no evidence to support the appellee's defense that the lease was abrogated, nor its theory that Mrs. French is estopped to deny its abrogation. The appellee says that Earl French is barred from claiming the rent, and that it would be an injustice to permit his wife to claim it. It is not clear that the evidence is sufficient to bar Earl French, but if it were he cannot by his conduct or his contract waive the payment of rentals due upon the property owned by the entireties so as to defeat a recovery in an action by his wife and himself.

Judgment reversed, with instructions to sustain the appellants' motion for a new trial.

NOTE.—Reported in 26 N. E. (2d) 47.