JOSEPH C. COVALT *v.* KAREN COVALT (GRANTHAM)

[No. 2-1274A292. Filed September 29, 1976.]

*Stephen A. Gross, Burris & Gross,* of Indianapolis, for appellant.

*Harry Kremer, Jr.,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought by Appellant-Petitioner, Joseph C. Covalt (Joseph), of the trial court's judgment increasing the property awarded to his former wife, Appellee-Respondent, Karen Covalt (Karen), in a previous dissolution of marriage decree by an additional Five Thousand ($5000.00) Dollars, based on her MOTION FOR RELIEF FROM DIVORCE DECREE AND AFFIDAVIT FOR RESTRAINING ORDER pursuant to Ind. Rules of Procedure, Trial Rule 60(B) (8).

We reverse.

## FACTS

The evidence and facts most favorable to the trial court's judgment are:

Prior to Joseph's Petition for Dissolution of Marriage filed on November 27, 1973,[1] he and Karen met with Stephen A. Gross (Gross), an attorney who was also a friend of Joseph's. Gross explained that the legislature had provided for a joint petition for dissolution of marriage and pointed out that if a disagreement arose, Karen should retain an attorney, as he would represent Joseph.[2]

When Joseph's Petition for Dissolution of Marriage was filed, it was accompanied by a Property Settlement Agreement

---

1. This filing date brought this case under the purview of the new Indiana Dissolution of Marriage Act, which became applicable to dissolution actions filed on or after September 1, 1973. Ind.Pub.L.No. 297, § 4 (Apr. 12, 1973).

2. See INDIANA CODE OF PROFESSIONAL RESPONSIBILITY, Ethical Considerations 5-14 to -16 as to the dangers of multiple representation.

which had been executed by Joseph and Karen on November 25, 1973, and witnessed by Gross. This Property Settlement Agreement contained no provision for modification.

The section of the Property Settlement Agreement relevant to this appeal is item "w" which provided for a "$5,000.00 cash settlement, which includes settlement for any equity in the house at 939 E. 58th Street." Joseph was to receive the house and be responsible for the mortgage payments.

Thereafter Joseph lost his job and informed Karen that it appeared the house would have to be sold for a loss. In December of 1973, he had two appraisals made of the property by realtors who indicated its value to be between Twenty-one Thousand ($21,000.00) Dollars and Twenty-four Thousand ($24,000.00) Dollars. (The purchase price was Twenty-six Thousand [$26,000.00] Dollars.) At this time there was nothing to indicate to either party that the property would sell in excess of this amount.

Karen then contacted Gross and informed him that she wished to release Joseph from item "w" of the Property Settlement Agreement because she "wanted to be fair" to him as he was going to spend his time and money to improve the property and she desired to avoid a mortgage deficiency for which she would be jointly liable.

In accordance with Karen's wishes, she and Joseph executed an Amendment to Property Settlement Agreement on January 23, 1974, deleting item "w" of the original Property Settlement Agreement. This amendment was filed with the trial court on February 13, 1974.

The same day, February 13, 1974, the trial court entered its Decree of Dissolution of Marriage, approving the terms of the Property Settlement Agreement as amended. Karen had been notified of the date of the final hearing but chose not to appear in person or by counsel.

Later Karen refused to execute a quitclaim deed for the house, so Joseph filed a Petition to Appoint Commissioner on

April 25, 1974, to have Karen's interest in the realty conveyed to him. The trial court entered an order appointing a commissioner the same day.

On April 30, 1974, which was more than sixty (60) days after the Decree of Dissolution of Marriage was entered, Karen responded with a Motion for Relief from Divorce Decree and Affidavit for Restraining Order pursuant to Trial Rule 60 (B) (8), alleging that she was entitled to an additional Five Thousand ($5,000.00) Dollar cash settlement because she had signed the Amendment to Property Settlement Agreement without benefit of counsel and full disclosure by Joseph and Gross as to the true value of the house.

Karen's Motion for Relief was apparently the result of her learning at some later time that the house had been listed with a realtor for Thirty-six Thousand Nine Hundred ($36,-900.00) Dollars—its recent purchase price having been Twenty-six Thousand ($26,000.00) Dollars. The ultimate gross sales price of the house was Thirty-four Thousand Five Hundred ($34,500.00) Dollars.

There was evidence that Joseph expended some of his funds for materials to remodel the house and worked ten (10) hours a day seven (7) days a week for four (4) months to improve the property. His labor was performed after the separation.

On June 19, 1974, trial was held on Karen's Motion for Relief, and a judgment was entered for her in the amount of Five Thousand ($5,000.00) Dollars.

## ISSUE

The sole issue for our disposition is:

Did the trial court commit reversible error by entering a judgment on June 19, 1974, amending its Decree of Dissolution of Marriage of February 13, 1974, to grant Karen the sum of Five Thousand ($5,000.00) Dollars?

CONTENTIONS—Joseph contends that a grant of relief to Karen under Trial Rule 60(B)(8) was improper as Karen failed to make a timely challenge to the Decree of Dissolution by filing a Motion to Correct Errors under Trial Rule 59. He adds that the Indiana Dissolution of Marriage Act clearly limits the power of the trial court to modify a property settlement agreement and a dissolution decree as it pertains to the property disposition under Indiana Code sections 31-1-11.5-10 and 17(a).

Karen counters that a trial court has a general equitable discretion to modify its judgments and dissolution decrees.

## DECISION

CONCLUSION—It is our opinion that the trial court committed reversible error by amending its earlier Decree of Dissolution of Marriage to grant Karen the sum of Five Thousand ($5,000.00) Dollars.

Our decision to reverse[3] the trial court's judgment is based solely on the provisions of the Indiana Dissolution of Marriage

3. The writer of this opinion would also reverse the trial court's judgment because there is no indication in the record that Karen, the appellee, could not have discovered the error on which she relied in her TR. 60(B)(8) motion within the sixty (60) day period, so as to have timely filed a Motion to Correct Errors as required by TR. 59. Judges White and Sullivan specifically disagree with this ground for reversal.

My rationale for reversal on this ground is that from aught that appears in the record Karen *could* have filed a Motion to Correct Errors within the required sixty (60) day period, and the burden should be on the party seeking the extraordinary relief of TR. 60 to demonstrate adequate cause for not fulfilling the "condition to appeal" by filing a Motion to Correct Errors . . . a jurisdictional requirement of which we will take notice sua sponte. In effect Karen has used TR. 60 as "a vehicle to avoid normal appeal procedures." Moe v. Koe (1975), 165 Ind. App. 98, 330 N.E.2d 761, 765. See also Warner v. Young American Volunteer Fire Dept. (1975), 164 Ind. App. 140, 326 N.E.2d 831.

The danger of such a circumlocution is recognized by Dean Harvey and Professor Townsend:

The right to raise errors which could be raised by a motion to correct errors is limited to errors which could not have been discovered in time for a motion to correct errors, under Rule 59.

4 W. HARVEY & R. TOWNSEND, INDIANA PRACTICE § 60.23(5)(d), at 222 (1971).

While I would put the burden on the one seeking the equitable relief afforded by TR. 60 to demonstrate affirmatively in the record that a

Act,[4] which, absent certain other conditions not here applicable, limit the trial court's power to revoke or modify a property settlement agreement incorporated into a final dissolution decree to cases involving fraud. From the record before us there is insufficient evidence of fraud, actual or constructive, to support the trial court's modification of its final decree awarding Karen $5,000.00.

Karen filed a motion denominated as a Motion for Relief from Divorce Decree and Affidavit for Restraining Order, seeking relief from the Decree of Dissolution of Marriage under Trial Rule 60(B)(8) seventy-six (76) days after it had been entered, alleging in effect that she had been without counsel at the time of the decree and that she had been misled by the representations of Joseph and his attorney so that she agreed to surrender her right under the Property Settlement Agreement to a Five Thousand ($5,000.00) Dollar cash settlement (item "w").

Because this case was filed shortly after September 1, 1973, the effective date of the Dissolution Act, the trial court

Motion to Correct Errors *could not* have been filed within the sixty (60) day period, others might not. They would place the burden on the appellant and affirm a judgment granting TR. 60 relief unless as a matter of law it positively appeared from the record that a Motion to Correct Errors could have been filed within the sixty (60) day period.

The cases repeatedly adopt the principle, both before and after the adoption of the Indiana Rules of Trial Procedure in 1971, that the office of the Motion to Correct Errors (or Assignment of Errors) is to serve as the complaint on appeal and to afford the trial court an opportunity to rectify its errors, if any. So fundamental is its function that failure to file it is jurisdictional. It is a condition precedent to appeal. 4 W. HARVEY & R. TOWNSEND, INDIANA PRACTICE § 59.7, at 133 (1971); TR. 59(G).

Once the Motion to Correct Errors is accepted as the keystone of the arch of appellate review, its relation to TR. 60 is relatively easy. TR. 60 is expected to provide extra-ordinary relief of an equitable nature *after* the passage of the 60 day period within which to file a Motion to Correct Errors. TR. 60 was borrowed from the Federal Rules, but should nevertheless be construed consistently with the fundamental requirements of TR. 59.

Thus, it seems an inevitable conclusion that TR. 60 relief cannot be resorted to unless there is a positive showing in the record that a TR. 59 Motion to Correct Errors could not have been filed within the sixty (60) day period. Otherwise chaos will prevail in the appellate process.

4. IND. CODE §§ 31-1-11.5-1 to -24 (1976) (hereinafter referred to as the Dissolution Act).

and counsel may have been familiar with some but not all of its ramifications.

The parties did effectively utilize the provision of the Act allowing them to enter a written agreement dividing their property, subject to the approval of the court.[5]

But, once their Property Settlement Agreement was approved by the court and merged into the Decree of Dissolution, only limited provisions were then available to the trial court to alter or modify it.

Several sections of the Dissolution Act seemingly must be read together: Indiana Code section 31-1-11.5-10 (c) states:

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent.

Indiana Code section 31-1-11.5-17 (a) provides:

(a) Provisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. *The orders as to property disposition entered pursuant to section 9* [31-1-11.5-9 re final decrees] *may not be revoked or modified, except in case of fraud which ground shall be asserted within two [2] years of said order.* Terms

---

5. Such property settlement agreements have long been favored in Indiana. *See, e.g.,* Ch. 43, § 21-½, (1873) Ind. Acts 107, *as added by* ch. 120, § 2, (1949) Ind. Acts 310 (repealed 1973). The State's policy of promoting amicable settlements in dissolutions has remained unchanged under the Dissolution Act which allows separating couples to divide their property by agreement, which agreement may be accepted by the trial court and incorporated into its dissolution decree, as follows:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, *the parties may agree in writing to provisions for* the maintenance of either of them, *the disposition of any property owned by either or both of them* and the custody and support of their children.

(b) In an action for dissolution of the marriage *the terms of the agreement if approved by the court shall be incorporated and merged into the decree* and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

IND. CODE § 31-1-11.5-10 (a) and (b) (1976) (emphasis added).

of the decree may be enforced by all remedies available for enforcement of a judgment including but not limited to contempt or an assignment of wages or salary except as otherwise provided in this chapter. (emphasis added).

The facts here do not require us to deal with any possible inconsistencies, but what emerges from even a casual reading of these two sections is the realization that the legislature intended finality for dissolution decrees as they relate to property dispositions. This conclusion is borne out by a survey of the legislative history of the Dissolution Act.

The Indiana Civil Code Study Commission, in seeking to revise Indiana divorce law, followed in large part the Uniform Marriage and Divorce Act (Uniform Act).[6] But one of the important deviations from the Uniform Act related to modification of property settlement agreements and dissolution decrees (as they pertain to property dispositions). Unlike the Uniform Act, which had broad provisions permitting the trial court to reopen and modify the property aspects of a dissolution decree,[7] the Study Commission proposed only limited means for modification,[8] and the legislature acceded to the limitations—relief from property settlement agreements only when the agreement so provides or the parties consent[9] and from the property sections of dissolution decrees (presumably if there is no agreement or the parties have not provided otherwise) only "in case of fraud."[10]

As the Study Commission drafters noted in their section on separation agreements, "[m]odification attempts are discour-

---

6. The Uniform Act may be found in 9 U.L.A. 455 (1973). The Study Commission's proposals were submitted to the Indiana General Assembly in the form of a Proposed Dissolution of Marriage Act (Proposed Act). See REPORT OF THE CIVIL CODE STUDY COMMISSION, PROPOSED DISSOLUTION OF MARRIAGE ACT (1970).

7. UNIFORM MARRIAGE AND DIVORCE ACT §§ 306(f) (property settlement agreements) and 316(a) (dissolution decrees).

8. REPORT OF THE CIVIL CODE STUDY COMMISSION, PROPOSED DISSOLUTION OF MARRIAGE ACT §§ 208(d) (property settlement agreements) and 217(a) (dissolution decrees) (1970).

9. IND. CODE § 31-1-11.5-10(c) (1976).

10. *Id.* § 31-1-11.5-17(a).

aged because of the extent to which former spouses use the modification process repeatedly for vexatious purposes only."[11]

Looking to the record before us, there was no evidence whatever that the house was worth more on the day Karen relinquished the Five Thousand ($5,000.00) Dollars by signing the Amendment to Property Settlement Agreement than either she or Joseph believed it to be worth. The appraisals secured by Joseph indicated it was worth Two Thousand ($2,000.00) to Four Thousand ($4,000.) Dollars less than its original purchase price. She was aware that Joseph had agreed to relieve her from any liability for the mortgage payments and that he was spending some of his money and considerable labor to make the property salable . . . and it did ultimately sell for more than the parties anticipated.

Certainly there is no actual fraud for there is no misrepresentation of a present existing material fact.[12] The evidence most favorable to the judgment is not susceptible of a reasonable inference that Joseph or his attorney misled Karen as to the present value of the house.

Nor is there a reasonable inference from the evidence most favorable to the judgment that Karen was deceived as to the future value of the house by Joseph or his attorney so as to form the basis for constructive fraud.

She was aware Joseph would probably add some value to the premises by his work and thereby increase the possibility of a larger sale price, but the extent of any such increase in value was unknown at the time. She chose not to employ an

---

11. REPORT OF THE CIVIL CODE STUDY COMMISSION, PROPOSED DISSOLU-TION OF MARRIAGE ACT § 217(a), Comment (a) (1970).

12. *See* Grissom v. Moran (1972), 154 Ind. App. 419, 290 N.E.2d 119, stating:

The essential elements of actionable fraud are a material representation of past or existing facts, which representations are false, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations to the detriment of the person so relying.
*Id.* at 427, 290 N.E.2d at 123 (citations omitted).

attorney or appraisers to aid her, but that fact alone does not necessarily lead to the conclusion that she was defrauded.

In sum, there is no evidence to support a reasonable conclusion that either Joseph or his attorney violated a duty to disclose knowledge as to the present or future value of the house or that she was in any way deceived or misled in relinquishing the Five Thousand ($5,-000.00) Dollars.

As the Property Settlement Agreement incorporated into the Decree of Dissolution contained no provision as to the subsequent modification of the property disposition as allowed by 10(c), and as no fraud was proven as required by 17(a), the trial court committed reversible error by modifying the original Decree of Dissolution to grant Karen the sum of Five Thousand ($5,000.00) Dollars.

For the reasons stated, the trial court's judgment is "clearly erroneous" (TR. 52(a)) and should be reversed.[13]

Reversed.

Sullivan, J., concurs; White, J., dissents without opinion.

NOTE.—Reported at 354 N.E.2d 766.

---

13. No effort was made to justify the trial court's actions under the 1967 statute giving it control over its judgments for ninety (90) days after rendition. IND. CODE § 33-1-6-3 (1976). The ninety (90) day control rule is not without limitation. *See* Wadkins v. Thornton (1972), 151 Ind. App. 380, 279 N.E.2d 849.