**Nancy J. McNEVIN, Appellant (Petitioner Below),**

v.

**Robert W. McNEVIN, Sr., Appellee (Respondent Below).**

**No. 2–1280A414.**

Court of Appeals of Indiana, Second District.

Jan. 24, 1983.

Rehearing Granted March 30, 1983.

Robert A. Burns, Condos & Burns, Indianapolis, for appellant.

Duge Butler, Jr., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Petitioner-appellant Nancy J. McNevin (Nancy) appeals from the trial court's judgment dismissing her personal injury claim against respondent-appellee Robert W. McNevin, Sr. (Robert), contending that the court erred in concluding her claim was extinguished by the parties' dissolution decree which incorporated a previously negotiated settlement agreement.

We affirm.

## FACTS

The record discloses that in May of 1978, after the parties had separated, Robert allegedly struck and injured Nancy. Robert filed a petition for dissolution of marriage in the Hendricks Circuit Court in November of 1978. A dissolution decree incorporating a previously negotiated settlement agreement was entered in September of 1979. The sections of the dissolution decree pertinent to this decision are set forth below:

6. *Settlement Agreement. The settlement agreement of the parties, as set forth hereinafter in this decree, was duly executed by each of the parties freely and without duress and after consultation and advice from counsel, and the rights of the parties should be adjudged accordingly.*

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by this Honorable Court as follows:

A. *Dissolution.* The bonds of matrimony heretofore existing between the parties are hereby absolutely dissolved effective with the issuance of this decree.

B. *Property Settlement Agreement.*

1. Personal Property. The petitioner [Robert] shall be the owner of all household goods, furniture and furnishings now in his possession as well as his own personal effects, clothing and jewelry. In addition, the petitioner shall be the owner of the following property:

motorcycles presently in possession of respondent

Datsun 280Z 1979 automobile;

1 Aluminum houseboat with Chrysler engine;

1 fishing boat and trailer;

household goods in El Lago, Florida real estate;

certain savings account at Peoples Bank and Trust Company; and, business account at Peoples Bank and Trust Company;

a certain Honda automobile which will be titled to the son of the parties at the time of the final Decree

except as otherwise provided in this agreement, all other tangible personal property heretofore reduced to his possession, or standing in his sole name.

*Except as otherwise provided in this agreement, the respondent shall be the owner of all intangible* and tangible *personal property heretofore reduced to her possession or standing in her sole name,* and the following property;

a certain Dodge wagon automobile;

a certain 1979 Oldsmobile;

a certain Chasta motor home;

a certain speed boat;

2 small Honda motorcycles;

all household goods located at 650 Arthur Drive, Indianapolis, Indiana.

As well as her personal effects, clothing and jewelry.

2. *Real Property.* That the wife be [sic] is hereby adjudged the individual owner of a [sic] certain pieces of real property commonly known as follows:

650 Arthur Drive, Indianapolis, Indiana

558 Arthur Drive, Indianapolis, Indiana

1 lot on John Johns River, Crescent City, Florida; (which said real estate has heretofore been deeded from the husband to the wife)

3. *Obligations.* The petitioner and respondent hereto each agree as to the separate obligations assumed hereunder to save the other party harmless from any further liability thereon.

The petitioner shall assume and pay until discharged in full, according with its terms, the existing indebtedness on the following:

(A) Master Charge in the approximate sum of $673.65

(B) L. Strauss & Co. in the approximate balance of $51.12

(C) Sears in the approximate balance of $2929.70

(D) Penney's account in the approximate sum of $705.20

(E) Ready Credit account in the approximate balance of $795.18

(F) Town & Country account in the approximate balance of $465.07

(G) VISA account in the approximate balance of $877.94

(H) Block's account in the approximate balance of $208.48

(I) Ayres account in the approximate balance of $639.71

(J) Lazarus account in the approximate balance of $95.13

(K) Woolco account in the approximate balance of $100.00

(L) Automobile insurance on wife's Oldsmobile for a period of one year from date of entry of this Decree.

4. Petitioner agrees to make arrangements for and to pay the cost of repair of damage to the den floor in the residence at 650 Arthur Drive, Indianapolis, Indiana within thirty (30) days from the date of entry of this Decree.

5. Petitioner agrees to waive that certain sum of One Thousand Dollars ($1,000.00) heretofore agreed to be paid by the wife to the husband for the purchase of a certain 1979 Oldsmobile.

6. Husband agrees to pay to the wife as alimony judgment the sum of Sixteen Thousand Eight Hundred Dollars ($16,800.00) payable in twenty-four (24) equal monthly instalments of Seven Hundred Dollars ($700.00) per month beginning on October 1, 1979 and continuing month to month thereafter until paid in full or until the death of the wife whichever occurs first. It is understood by and between the parties that said sum agreed to be paid by petitioner is an alimony judgment, the intent of the parties being to provide the husband with a deductable [sic] expense for Federal and State income tax purposes.

7. Husband agrees to assume and pay schooling expenses for the children of the parties.

8. *Life Insurance.* That the petitioner shall have the sole possession of the policies of life insurance on his life and the respondent shall become the owner of the existing life insurance policies on her life, and each party assumes and agrees to pay the premiums on said policies after the entry of this Decree of Dissolution.

9. Petitioner agrees to assume and pay Income Tax liabilities for the year 1979 incurred on his behalf and to save the respondent harmless from any liability thereon.

10. *Accounts.* That the Respondent has a checking account at the Indiana National Bank in Indianapolis, Indiana, this said account shall become the property of the wife.

11. *Disclosure. The respective parties to this cause of action state that they have made a full and complete disclosure*

*to one another of all the assets that have been accumulated during the term of the marriage and have disclosed to each other all of the financial liabilities, either jointly or severally, which were incurred during the term of this marriage.*

12. *Attorney's Fees.* Petitioner shall pay the respondent's attorney his reasonable attorney's fees in the total amount of One Thousand Five Hundred Dollars ($1,500.00) within thirty (30) days from the entry of this Decree.

13. *Costs.* Costs herein are taxed against the petitioner and have been paid as shown by the receipt of the Clerk, presented to the Court.

14. *Modification or Waiver.* No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed by both parties hereto. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default.

15. *Execution of Additional Instruments.* Each party hereto shall, at the request and expense of the other, execute and deliver to the other any and all releases, deeds, bills of sale, instruments of assignment and other documents which the other may reasonably require for the purpose of giving full force and effect to this agreement.

*Record* at 28–32 (emphasis supplied).

In May of 1980 Nancy commenced this cause of action by filing a complaint in the Marion Superior Court. Alleging she had sustained injuries as a result of Robert's 1978 attack upon her, Nancy prayed for damages of $200,000.

Concluding that a personal injury claim is a chose in action and therefore property subject to distribution on dissolution, the trial court dismissed Nancy's complaint because a dissolution decree bars an independent action involving divisible marital property. The judgment of dismissal [1] reads in pertinent part as follows:

Parties by counsel, oral argument heard on Defendant's Motion to Dismiss. The Court being duly advised in the premises finds as follows:

1. The incident on which this claim for injuries is based arises from an alleged assault and battery, which occurred on May 27, 1978, while the parties were husband and wife.

2. A dissolution decree dissolving this marriage was entered on September 19, 1979, by the Hendricks Circuit Court and the Decree incorporated the terms of a Property Settlement Agreement.

3. By the terms of the Property Settlement Agreement the parties finalized the disposition of their "property and property rights", "freely without duress and after consultation and advice from counsel."

4. The agreement included a money judgment to the wife in the amount of Sixteen Thousand, Eight Hundred Dollars ($16,800.00), as well as the real estate of the parties.

5. *A tort claim is a chose in action which was or should have been considered in reaching the property settlement agreed to by the parties and incorporated into the Decree of Dissolution.*

*Record* at 39 (emphasis supplied).

*Subsequent* to the filing of the motion to correct error in this case, the attorney representing Nancy in the dissolution action filed an affidavit stating that Nancy had asked him not to disclose during negotiations her intention to assert the battery claim in a separate action after the dissolution proceeding was concluded. There is nothing, however, in the record indicating that Robert was aware during the settlement negotiations, or that Robert or the trial court was aware during the dissolution action, that Nancy had this specific intention.

After the trial court denied her motion to correct error, Nancy perfected this appeal.

---

1. The dismissal is more properly treated as a summary judgment because matters outside the pleadings were considered. Ind.Rules of Procedure, Trial Rule 12(B). Our review is therefore governed by summary judgment principles. T.R. 56.

## ISSUE

Essentially, Nancy raises one issue:

Was her personal injury claim extinguished by the dissolution decree which had been executed pursuant to a settlement agreement?

## DECISION

■ PARTIES' CONTENTIONS—Nancy argues that the trial court's judgment eviscerates the supreme court's action in abrogating the doctrine of interspousal immunity in *Brooks v. Robinson,* (1972) 259 Ind. 16, 284 N.E.2d 794; and maintains that the judgment foreclosed her right under IND. CONST. art. 1, § 20 to trial by jury of her tort claim. She insists that her unliquidated personal injury claim is not property. But even if it is property, it is at most "intangible personal property . . . standing in her sole name" which she owns under the terms of the dissolution decree. Her claim was thus preserved, not extinguished, by the decree; and her trial attorney's affidavit shows that she did not waive the claim as part of the settlement agreement.[2]

Robert has not submitted an appellee's brief.

CONCLUSION—Because Nancy failed to reveal her personal injury claim during the dissolution proceeding, she is estopped to assert it in this independent action.

Before proceeding, we clear away one piece of legal underbrush created by Nancy's reliance on *Brooks v. Robinson, supra.* The Indiana Supreme Court in *Brooks* abrogated the common-law rule of interspousal tort immunity. So Nancy is correct in claiming that her cause of action cannot be barred on the ground that the alleged tor-

tious conduct occurred while the parties were married. Granting interspousal tort immunity no longer exists, that rule of law has no direct bearing on this case. The fact that the alleged tortious conduct occurred while the parties were married is not the root of Nancy's being barred from bringing her tort action. Rather, the bar to this suit stems from her failure to fully comply with the disclosure clause of the parties' settlement agreement incorporated in the divorce decree.

In arriving at the ultimate conclusion that Nancy now is estopped to assert her tort claim, we adopt a different rationale than that used by the trial court. The trial court's analysis began with the premise that a tort claim is a chose in action and therefore property. It then linked to this premise the conclusion that Nancy's tort claim was marital property, subject to division in the dissolution action. Such is not the case.

■ A "chose in action" has been defined as "a personal right not reduced into possession but recoverable by a suit at law." *Chicago, Burlington & Quincy R.R. v. Dunn,* (1869) 52 Ill. 260; 63 Am.Jur.2d *Property* § 26 (1972). Choses in action are personal property. *Coty v. Cogswell,* (1935) 100 Mont. 496, 50 P.2d 249. Used in its broadest sense, the term encompasses all rights of action whether they sound in contract or in tort. *Id.; Bennett v. Bennett,* (1889) 116 N.Y. 584, 23 N.E. 17; *Gibson v. Gibson,* (1877) 43 Wis. 23. And there are a series of cases involving the early Married Woman Property Acts which hold that the designation "chose in action" does apply to a personal injury claim. *Chicago, Burlington & Quincy R.R. v. Dunn, supra; Musselman v. Galligher,* (1871) 32 Iowa 383; *Berger v. Jacobs,* (1870) 21 Mich. 215.

2. The affidavit of Nancy's attorney is of no effect to show that she did not waive her personal injury claim as part of the settlement agreement. It attempts to go beyond the face of the decree. Furthermore, because it did not accompany the motion to correct error, it cannot be considered a part of the record. It is axiomatic that affidavits may not be filed subsequent to the motion to correct error as a

means for placing additional evidence in the record. *E.g., Jackson v. Beard,* (1970) 146 Ind. App. 382, 255 N.E.2d 837.

Further, we do not understand the existence of such an affidavit in view of Canon Four of the Code of Professional Responsibility (A Lawyer Should Preserve the Confidences and Secrets of a Client).

■ The above cases notwithstanding, the phrase "chose in action" is usually confined to assignable rights of action arising out of contract and perhaps tortious injury to property, or for tort connected with a contract. Thus, the more general use of the term *excludes* tort actions for personal injuries. *Coty, supra; Pulver v. Harris* (1873) 52 N.Y. 73; *Gibson, supra.*

■ We have found no Indiana authority addressing the issue whether a tort claim for a personal injury is a chose in action and therefore property. However, it is unnecessary for us now to resolve this question. Even if Nancy's personal injury claim is classified as a property interest, it fails to qualify as *marital* property because it was not susceptible to division at the time of dissolution.

Although the Indiana Dissolution of Marriage Act provides for parties to enter into an agreement disposing of any property owned by either or both of them, subject to the court's approval,[3] or, failing such agreement, for the court to divide the property of the parties,[4] there is no statutory definition of what constitutes marital property. And, despite the fact that a burgeoning body of case law has dealt with finding what does and does not constitute marital property, a tort claim by one spouse against the other which has not been reduced to judgment has heretofore gone unconsidered. However, in cutting this Gordian knot, we find the following cases helpful.

In *Loeb v. Loeb,* (1973) 261 Ind. 193, 301 N.E.2d 349, involving a husband's vested remainder subject to divestment in a trust created by his mother, the court held that the remainder was not property includable in a property settlement award, as the husband had "no *present* interest of *possessory* value." 301 N.E.2d at 353 (emphasis added). The *Loeb* court quoted favorably *Storm v. Storm,* (1970) Wyo., 470 P.2d 367,

in which the Wyoming Supreme Court made the following statement:

"With respect to future property, we think the rule must be, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and *a mere expectancy is not subject to division. Hill v. Hill,* 82 Cal. App.2d 682, 187 P.2d 28, 36."

301 N.E.2d at 354 (emphasis supplied).

The *Loeb* case was followed by *Wilcox v. Wilcox,* (1977) 173 Ind.App. 661, 365 N.E.2d 792 and *Savage v. Savage,* (1978) 176 Ind. App. 89, 374 N.E.2d 536. In rejecting contentions that future income and pension benefits extinguishable by death should be classified as marital property, the court in those cases concluded that "marital property" includes only those assets in which there is a vested present interest. *See also Libunao v. Libunao,* (1979) Ind.App., 388 N.E.2d 574.

■ The above line of cases firmly establishes the principle that marital property is property which is capable of division at the time of dissolution. Even assuming that a tort claim is property by virtue of being classified a chose in action, Nancy's claim, which was not reduced to judgment at the time of final separation, was not so divisible, i.e., was not marital property. She had a naked right to bring her action to trial in an attempt to recover damages, but no present tangible pecuniary interest capable of division.

Having concluded that Nancy's personal injury claim cannot be classified as "marital property," we turn to the broader question whether she is estopped by the terms of the separation agreement to assert her claim.[5]

■ Indiana law favors negotiated settlement agreements—a fact evidenced by the language of IC 31–1–11.5–1.[6] *See Covalt v.*

---

3. IC 31–1–11.5–10.

4. IC 31–1–11.5–11.

5. Surprisingly, Robert and Nancy's separation agreement did not include a general release clause.

6. "(a) This chapter shall be construed and applied to promote its underlying purposes and policies.

\*    \*    \*    \*    \*    \*

(4) To provide for separation agreements." IC 31–1–11.5–1.

*Covalt,* (1976) 171 Ind.App. 37, 354 N.E.2d 766. But *courts are free to reject settlement agreements which are unfair or unreasonable.* IC 31–1–11.5–10; *Waitt v. Waitt,* (1977) 172 Ind.App. 357, 360 N.E.2d 268; *Flora v. Flora,* (1975) 166 Ind.App. 620, 337 N.E.2d 846. In order to determine if an agreement is fair and reasonable, the trial court must be cognizant of all the pertinent facts. And what is pertinent is defined by the terms of the separation agreement.

The agreement here contained a disclosure clause which required the parties to reveal to each other all of their respective *assets* and financial liabilities. Yet, Nancy did not reveal that she intended to bring a separate action against Robert based on her personal injury claim. Our decision thus turns upon an interpretation of the word "asset": Is Nancy's personal injury claim an "asset" within the meaning of the separation agreement?

■ It is true Robert's motion to dismiss was supported by exhibits, thus requiring an interpretation of the agreement in a summary judgment setting. Ind.Rules of Procedure, Trial Rule 12(B). Absent any ambiguity, the interpretation of a contract is a question of law *appropriate for summary judgment resolution. Ancich v. Mobil Oil Corp.,* (1981) Ind.App., 422 N.E.2d 1320. Nancy does not contend that the language of the separation agreement is ambiguous. Moreover, any ambiguity, if it exists here, is a patent ambiguity which may *not* be explained by extrinsic evidence. *Hauck v. Second National Bank,* (1972) 153 Ind.App. 245, 286 N.E.2d 852, *trans. denied.* Ambiguities which arise, not because of extrinsic facts, but by reason of the language used, produce pure questions of law to be answered by examining the four corners of the document. *Churchwell v. Firestone Industrial Products Co.,* (1982) Ind.App., 431 N.E.2d 853; *R.R. Donnelley & Sons, Co. v. Henry Williams, Inc.,* (1981) Ind.App., 422 N.E.2d 353; *Hauck, supra.* Nancy does not dispute the operative facts to be applied to the separation agreement's language.

Thus, the agreement is appropriate for summary judgment interpretation because any ambiguity can be resolved without the aid of factual determinations. *See Ancich v. Mobil Oil Corp., supra.*

■ In construing the language of a separation agreement, we apply the general rules governing the construction of all contracts. *Baugher v. Barrett,* (1957) 128 Ind. App. 233, 145 N.E.2d 297; *Higgins v. St. Joseph Loan & Trust Co.,* (1933) 98 Ind.App. 674, 186 N.E. 910. The words of a contract are taken to be used in their ordinary or popular sense, absent a clear indication that a technical or special meaning was intended. *Haworth v. Hubbard,* (1942) 220 Ind. 611, 44 N.E.2d 967; *Nimet Industries, Inc. v. Joy Manufacturing Co.,* (1981) Ind.App., 419 N.E.2d 779.

Standard dictionaries define an asset as "a useful or valuable quality or thing"[7] or "an item of value owned."[8] Certainly Nancy would not have begun this lawsuit if she did not consider her tort claim to have value, i.e., to be an asset.

Of course, the word "asset" may also be used in a more limited sense. For instance, the appellate court has declared that "[a] claim for damages for causing the death of a party is not assets [sic] of the deceased, within the meaning of the statute authorizing the granting of letters of administration in this state." *Tri-State Loan & Trust Co. v. Lakeshore & M.S. Ry. Co.,* (1921) 76 Ind.App. 141, 131 N.E. 523, 524. And the supreme court, in addressing the question of a bank's insolvency, defined an asset as something which could be "realized upon in cash within a reasonable time." *Walter v. State,* (1935) 208 Ind. 231, 195 N.E. 268, 273.

■ A word, however, "may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* (1918) 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372. Although there are no Indiana cases so deciding, the word "assets" as used in the

---

7. *American Heritage Dictionary of the English Language* (1970).

8. *Webster's Third New International Dictionary* (1971).

328

context of a dissolution action must be construed in its broadest sense. This is so because a broad construction more nearly effectuates the intent of the parties, the ultimate goal in the interpretation of any contractual provision. Here there was the undertaking of a reciprocal duty to disclose all assets and financial liabilities, undoubtedly for the purpose of assuring each party that there had been no unfair misrepresentation as to either's financial position. Furthermore, a broad reading of "assets" affords the trial court a basis for determining the fairness of a separation agreement—which was precisely what the trial court here was attempting to do.

▮ Equity will not allow Nancy to profit from her violation of a clear-cut duty to disclose her personal injury claim. Even if her claim could be classified as intangible personal property, reserved to her by the terms of the parties' agreement, her failure to disclose it created an estoppel to assert the claim in an independent action.

▮ Equitable estoppel arises when "(1) a false representation or concealment of material facts [is] made with actual or constructive knowledge of the true state of facts; and (2) the representation is made to one who is without knowledge or reasonable means of knowing the true facts with the intent that he or she will rely upon it; and (3) the second party must rely or act upon such representation to his or her detriment." *Coghill v. Badger,* (1981) Ind.App., 418 N.E.2d 1201, 1208–09 (emphasis omitted). *Accord, Kline v. Kramer,* (1979) Ind.App., 386 N.E.2d 982; *Sheraton Corp. of America v. Kingsford Packing Co.,* (1974) 162 Ind. App. 470, 319 N.E.2d 852. A party may be estopped by inaction:

"*Equitable estoppel may arise from silence* as well as from positive conduct. For silence to give rise to equitable estoppel, *there must not only be an opportunity to speak, but an imperative duty to do*

so. *French v. National Refining Co.,* 217 Ind. 121, 26 N.E.2d 47 (1940). Indiana follows the general rule 'that silence and acquiescence when good faith requires a person to speak or act, are, in the matter of estoppel, equivalent to express affirmation. ['] *Bahar et al. v. Tadros, etc. et al.,* 123 Ind.App. 570, 584, 112 N.E.2d 754 (1953); *Chadwick v. Miller et al.,* 126 Ind.App. 325, 133 N.E.2d 67 (1956)." *Erie-Haven, Inc. v. First Church of Christ, Scientist,* (1973) 155 Ind.App. 283, 292 N.E.2d 837, 842 (emphasis supplied). *Accord, Kline, supra.* So a party who has a duty to disclose certain facts to the court but fails to do so is estopped from later bringing the same facts to the court's attention in what amounts to an inconsistent position. *See American National Bank & Trust Co. v. St. Joseph Valley Bank,* (1979) Ind.App., 391 N.E.2d 685; *Hargis v. United Farm Bureau Mutual Insurance Co.,* (1979) Ind.App., 388 N.E.2d 1175; *Lyon v. Lyon,* (1977) Ind.App., 369 N.E.2d 649; *Erie-Haven, supra.* A party cannot run both with the hare and the hounds.

Unless we are prepared to prejudge Robert guilty of the act with which Nancy charges him, we cannot assume that he had "knowledge or reasonable means of knowing the true facts" concerning Nancy's tort claim. Nancy had a contractual duty to reveal *all* her assets. In signing the separation agreement, she affirmed that she had done so. Thus, the trial court's decision to adopt the parties' separation agreement was made not only without full knowledge of all the facts, but also on the basis of misleading information.

In the interest of clarity, it is desirable that we add to the above what we are not holding. We are not making a determination as to whether a tort claim is property which must be "considered" by a court in dividing marital property,[9] only that such a claim is not "marital property" subject to division. *See Savage, supra; Wilcox, su-*

9. *Cf.* I.C. 31–1–11.5–11(b)(5) (future income should be considered by trial court in determining what constitutes a fair and reasonable allocation of divisible property); *Savage, supra* (future interests in pension plans must be considered by trial courts dividing marital property).

*pra; Loeb, supra.* And therefore the trial court's judgment cannot be sustained on that basis. The trial court's judgment may be and is affirmed on the narrow ground that in order for it to "approve" the property settlement agreement of the parties, according to its terms, revelation of all their "assets" was necessary. I.C. 31–1–11.5–10 contemplates that a court's approval is necessary "To promote the amicable settlement of disputes . . ."—an objective the court can consummate only if all the contract terms are complied with prior to the court's approval or acceptance of the agreement.

Thus, we conclude that the trial court's judgment should be affirmed on the basis that Nancy was equitably estopped to assert her tort claim once the separation agreement was accepted and the dissolution decree entered. The trial court properly entered judgment for Robert.

AFFIRMED.

CONOVER, J. (sitting by designation), concurs.

YOUNG, P.J. (sitting by designation), dissents with separate opinion.

YOUNG, Presiding Judge, dissenting.

I dissent.

I disagree with the majority's broad interpretation of the term "assets" in the context of the disclosure provision. The intent of the parties is of paramount importance in interpreting the settlement agreement. The parties did not intend to resolve the tort action by the settlement. By omitting any releases in the settlement agreement, they have left such matters to future resolution. Thus, by the terms of the agreement as the parties intended them to be interpreted, the tort claim is not included as an asset. I would reverse the dismissal by the trial court.