ANNA LISZKAI *v.* STEPHEN LISZKAI.

[No. 2-275A44. Filed March 22, 1976, Rehearing denied May 11, 1976.]

534

*Richard Kammen, Bowman & Kammen,* of Indianapolis, for appellant.

Did the trial court abuse its discretion by the manner in which it made the property disposition and by its failure to grant maintenance to Anna?

CONTENTIONS—Anna contends that the trial court abused its discretion in the disposition of property by awarding Stephen virtually all of the couple's assets and failing to consider properly the parties' earning abilities, in violation of Indiana Code section 31-1-11.5-11[2] (section 11), especially subsection (e). She further claims that there was an abuse of discretion in the trial court's refusal to grant her maintenance in light of Indiana Code section 31-1-11.5-9(c)[3] (section 9(c)).

Stephen counters that even if the trial court were to give additional special consideration to any of the factors listed under section 11, the final disposition of property was reasonable considering the fact that Stephen has a continuing responsibility for the home and children and that Anna received the greater percentage of the couple's equity. He additionally argues that the evidence was such that the trial court was not compelled to make a grant of maintenance under section 9(c).

## DECISION

CONCLUSION—It is our opinion that the trial court did not abuse its discretion in dividing the property and in denying maintenance to Anna.

Because dissolution of the marriage contract has been daily grist of the judicial mill, it is appropriate for us to recognize this case arose after September 1, 1973, the effective date of the new Indiana Dissolution of Marriage Act.[4] Since that time the Indiana Bench and Bar have been in a period of

2. (Burns Code Ed., Supp. 1975).
3. (Burns Code Ed., Supp. 1975).
4. IC 1971, 31-1-11.5-1 to -24 (Burns Code Ed., Supp. 1975) (hereinafter referred to as the Dissolution Act).

During the marriage, Anna was primarily a homemaker. She was, however, employed intermittently outside the home . . . at the Methodist Hospital laundry for a period of three years, in an x-ray office at one time, and in homes as a housekeeper over a nine-year period. Also, she was employed as a maid in a hotel for about ten days shortly before the Dissolution, a job she voluntarily quit claiming that the work was too difficult.

The Liszkais acquired during their years of marriage a home with an equity value of $6,500.00 to $7,000.00, a 1967 Oldsmobile valued at $100.00, household goods worth about $400.00 or $500.00, and a savings account with a balance of $360.00, giving them total assets of $7,360.00 to $7,960.00.

On August 29, 1974, the trial court ordered the marriage dissolved and awarded Stephen custody and control of the two minor children, Anna to have visitation rights. The trial court also awarded Stephen the mortgaged home and the majority of the household furnishings, along with the 1967 Oldsmobile. (Presumably he also received the $360.00 savings account under the grant of "all other property.")

For Anna, the court ordered a $5,000.00 "alimony" judgment to be paid at the rate of $250.00 per month for a period of twenty months, or until her death, whichever occurred first; a sum of $250.00 as an additional attorney's fee; relief from all outstanding indebtedness incurred by the parties during their marriage; and hospitalization insurance if Stephen were allowed to keep her on his policy at work.

## ISSUE

The dual issue[1] for our disposition is:

---

1. An alleged error as to the awarding of custody of the minor children to Stephen was not briefed by Anna and is therefore waived on appeal. Appellate Rule 8.3 (A) (7). *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E. 2d 299; *Kerkhof* v. *Dependable Delivery, Inc.* (1975), 167 Ind. App. 248, 338 N.E.2d 513; *Haynes* v. *Haynes* (1975), 167 Ind. App. 55, 337 N.E. 2d 580; *Citizens National Bank of Grant County* v. *Harvey* (1975), Ind. App., 334 N.E.2d 719.

*Gordon Dempsey, Gordon Smith, Smith and Jones,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought by Appellant-Wife Anna Liszkai (Anna) of a Dissolution Decree entered by the trial court awarding her a $5,000.00 "alimony" judgment to be paid at the rate of $250.00 per month for a period of twenty (20) months, claiming that the trial court abused its discretion by the manner in which it made the property disposition and in failing to grant her maintenance.

We affirm.

## FACTS

The evidence and facts most favorable to the trial court's judgment are:

Appellee-Husband Stephen Liszkai (Stephen) filed a Petition for Dissolution of Marriage in the Marion County Superior Court on April 17, 1974. Anna filed a Cross-Petition for Dissolution on August 16, 1974, requesting maintenance in addition to a division of the couple's property.

The record reflects that Stephen and Anna were married in Hungary in 1950 and immigrated to the United States in 1956.

Four children were born to Stephen and Anna. Two of these children were emancipated at the time Stephen filed for dissolution; however, Stephen permitted one of them—an eighteen-year-old son—to continue to reside in the family residence. The other two children were minors living in the Liszkai home.

Stephen was employed as a janitor, with a weekly take-home pay of $185.00. He spent his spare hours as an upholsterer and received some income from this "hobby." The income thus received was never established as significant.

transition in the field of domestic relations. Familiar concepts have changed.

The now repealed divorce statutes[5] long contained a basic provision for alimony:

The court shall make such decree for alimony in all cases contemplated by this act, as the circumstances of the case shall render just and proper. . . . Ch. 43, § 20, [1873] Ind. Acts 107 (repealed 1973).[6]

Alimony could be paid in various ways:

* * * In determining the character of the payments of the alimony the court may require it to be paid in money, other property, or both, and may order the transfer of property as between the parties, whether real, personal or mixed and whether title at the time of trial is held by the parties jointly or by one of them individually. In determining the method of the payment of the alimony the court may require that it be paid in gross or in periodic payments, either equal or unequal, and if to be paid in periodic payments the court may further provide for their discontinuance or reduction upon the death or remarriage of the wife. . . . Ch. 43, § 22, [1873] Ind. Acts 107, *as amended*, ch. 120, § 3 [1949] Ind. Acts 310 (repealed 1973).[7]

A landmark case, *Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 571, 181 N.E.2d 639, 641, analyzed prior case law and set out the factors to be considered by the trial court in determining how much alimony should be awarded:

(1) the existing property rights of the parties;

(2) the amount of property owned and held by the husband and the source from which it came;

(3) the financial condition and income of the parties and the ability of the husband to earn money;

---

5. These repealed divorce statutes were formerly codified at IC 1971, 31-1-12-1 *et seq.* (Burns Code Ed.).

6. This statute was formerly codified at IC 1971, 31-1-12-14 (Burns Code Ed.).

7. This statute was formerly codified at IC 1971, 31-1-12-17 (Burns Code Ed.).

(4) whether or not the wife by her industry and economy has contributed to the accumulation of the husband's property;

(5) the separate estate of the wife. (citations omitted)

When the alimony statutes[8] were repealed by the Indiana General Assembly they were replaced by a property division statute which defines the property available for division upon dissolution of the marriage:

In an action [for dissolution of marriage], the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts. . . . IC 1971, 31-1-11.5-11 (Burns Code Ed., Supp. 1975).

This section 11 goes on to establish the mechanics or method of division:

in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale. IC 1971, 31-1-11.5-11, *supra.*

and then closes with guidelines for the trial court to utilize in determining a just and reasonable division of the property:

In determining what is just and reasonable, the court shall consider the following factors:

(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence

---

8. These repealed alimony statutes were formerly codified at IC 1971, 31-1-12-14, 17 (Burns Code Ed.).

or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(d) the conduct of the parties during the marriage as related to the disposition or dissipation of the property;

(e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties. IC 1971, 31-1-11.5-11, *supra.*

Although much of the Dissolution Act, including section 11, was patterned after the Uniform Marriage and Divorce Act,[9] there is similarity between some of the factors previously considered by prior case law in arriving at a property division and those set out in section 11. The Dissolution Act now provides a more structured and detailed basis for the trial court's disposition of the property upon dissolution of marriage.

In deciding this case, the trial court utilized section 11 to divide the property of Stephen and Anna so as to avoid sale of the principal asset, the family home. Payments equaling $5,000.00 were required of Stephen in accordance with one of the ways of dividing the property allowed by section 11:

> [T]he court shall divide the property of the parties . . . *by setting the same or parts thereof over to one [1] of the spouses* and requiring either to pay such sum as may be just and proper. . . . IC 1971, 31-1-11.5-11, *supra* (emphasis added).

The trial court's use of the term "alimony" in connection with payment of this sum is no longer technically correct. This word of art has experienced a confusing and convoluted history in Indiana. *See* Note, *Indiana's Alimony Confusion,*

---

9. The Indiana General Assembly utilized section 209 of the Indiana Civil Code Study Commission's Proposed Dissolution of Marriage Act in adopting section 11 of the Dissolution Act. The Proposed Dissolution Act was itself taken in part from section 307 of the Uniform Marriage and Divorce Act. *See* Fox, *Domestic Relations, 1975 Survey of Indiana Law,* 8 IND. L. REV. 197 at 206 (1975); REPORT OF THE CIVIL CODE STUDY COMMISSION, PROPOSED DISSOLUTION OF MARRIAGE ACT § 210 (1970); UNIFORM MARRIAGE AND DIVORCE ACT § 308. A history of the legislative process in Indiana is set out in Note, *Alimony in Indiana Under No-Fault Divorce,* 50 IND. L.J. 541 (1975).

45 IND. L.J. 595 (1970). No doubt this is why the Dissolution Act eliminated "alimony" from the family law vocabulary entirely. *See* Fox, *Domestic Relations, 1975 Survey of Indiana Law,* 8 IND. L. REV. 197 at 205 (1975); Hopson, *Summary of the New Indiana Dissolution of Marriage Law,* 1972-73 ICLEF ANNUAL SURVEY OF INDIANA LAW 7 at 27, n. 73 (1973).

Whatever the trial court's terminology, there was statutory authority under the new Dissolution Act for the manner in which it divided the Liszkai's property.

The net worth of the parties at most totalled $7,900.00. Stephen was awarded the home (subject to encumbrances) probably because the court awarded him custody of the children. One of the trial court's guidelines for a just and reasonable division of property is:

the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children. IC 1971, 31-1-11.5-11 (c), *supra.*

Anna was awarded the sum of $5,000.00 payable in installments. We see no other salient circumstances which would compel us to find that the trial court abused its discretion in not awarding Anna the remaining $2,900.00 of equity in their property. Even placing more emphasis on the earning ability of Stephen as Anna urges, the trial court still did not abuse its discretion as there was ample evidence that Stephen's weekly salary would be consumed by his responsibilities for the home and the children in his custody.

In the final analysis, Anna's major contention is that the trial court should have granted her maintenance, by one means or another, under the new Dissolution Act.

Prior to passage of the Dissolution Act there was an evident dichotomy in the cases considering the nature of

alimony. One line of cases emphasized alimony as a property settlement; the other line considered alimony as maintenance and support. *See* the analysis by Judge Sullivan in *Wellington* v. *Wellington* (1973), 158 Ind. App. 649, 304 N.E.2d 347, and the cases cited therein.

Be that as it may, Anna presents us with no authority or cogent argument for the proposition that she is entitled to maintenance under a new statute which mandates a property disposition in the place of an award of alimony. To the contrary, it would appear that the Indiana General Assembly has adopted a concept of property division separate from the concept of maintenance by enacting a separate provision for maintenance—Indiana Code section 31-1-11.5-9(c)[10] (section 9(c)).

It allows maintenance only under certain limited circumstances:

> *The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected,* the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court. IC 1971, 31-1-11.5-9(c) (Burns Code Ed., Supp. 1975) (emphasis added).

There was evidence to support the trial court's refusal to fit Anna into these statutory circumstances. She had a history of employment outside the home. In weighing all the evidence as to whether she was either physically or mentally incapacitated to the extent that her ability to support herself was materially affected, the trial court in its discretion concluded she was not so incapacitated . . . a conclusion for which there was a rational basis in the evidence.

Significantly, Anna fails to supply us with any authority for her belief that a poorly educated, middle-aged woman,

---

10. (Burns Code Ed., Supp. 1975).

with few marketable skills, is "incapacitated" within the meaning of section 9(c), which is not surprising in view of the legislative history of this section.

When the Civil Code Study Commission submitted the Proposed Dissolution Act to the General Assembly, it included a section which could be construed as authorizing a trial court to grant maintenance to a spouse "unable to support himself":

[T]he court may grant a support order, denominated a maintenance order, for either spouse only if it finds

(1) that the spouse seeking maintenance lacks sufficient income and property to provide for his reasonable financial needs and

(2) that the spouse seeking support is *unable to support himself through employment* or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

REPORT OF THE CIVIL CODE STUDY COMMISSION, PROPOSED DISSOLUTION OF MARRIAGE ACT § 210 (1970) (emphasis added)[11]

In rejecting this proposed section, the legislature finally adopted the more restrictive language of section 9(c) permitting the trial court to consider maintenance *only* if it finds the spouse "to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected." *See Temple* v.

---

11. Section 210 of the Proposed Dissolution Act was based on section 308 of the Uniform Act—the language of each being almost identical. Even with this somewhat broader provision for maintenance, the Commissioner's Prefatory Note to the Uniform Act took care to point out that:

\* \* \* The Act authorizes the division, upon dissolution, of property . . . as the primary means of providing for the future financial needs of the spouses. Where the marital property is insufficient for this purpose, the Act provides that an award of maintenance can be made to either spouse under appropriate circumstances to supplement the available property. But, because of its property division provisions, the Act does not continue the traditional reliance upon maintenance as a primary means of support for the divorced spouse.

*Temple* (1975), 164 Ind. App. 215, 328 N.E.2d 227. "Unable to support" (as proposed) is broad and could reasonably be interpreted as including spouses who for one reason or another find themselves unemployable but are not physically or mentally incapacitated, etc. Thus, the distinction made by the Legislature.

If we were not to abide by this distinction and were to construe section 9(c) as including general unemployability due to the lack of many marketable skills (as Anna proposes), we could justly be accused of ravishing section 9(c).

By statute[12] we are directed to give words their plain and ordinary meaning—this we have done.

Thus we conclude that the judgment of the trial court was not one which is "clearly against the logic and effect of the facts and circumstances before the court," *Weiss* v. *Weiss* (1974), 159 Ind. App. 231, 306 N.E.2d 120, 125 (and cases cited therein), and therefore find there has been no abuse of discretion by the trial court.

Judgment affirmed.

White, J., concurs in result only; Sullivan, J., concurs with opinion.

### Concurring Opinion

Sullivan, J.—I concur in the result obtained by Presiding Judge Buchanan's opinion in that it affirms the property distribution ordered by the trial court and in that it states that we may not reverse the trial court's denial of maintenance as an abuse of discretion under the facts of this case.

However, I must disagree with Presiding Judge Buchanan's attribution of negative significance to the Indiana General Assembly's refusal to adopt the proposal of the Civil Code Study Commission to provide for maintenance if "the spouse

---

12. IC 1971, 1-1-4-1 (Burns Code Ed.).

seeking support (sic) is unable to support himself through employment." More specifically, I disagree with the clear implication of Judge Buchanan's opinion that "a poorly educated, middle-aged woman, with few marketable skills" may not, as a matter of law, be determined to be incapacitated within the meaning of § 31-1-11.5-9 (c).

I do not see the General Assembly's choice of phrasing, vis-a-vis the Uniform Act phrasing suggested by the Civil Code Study Commission, as less amenable to maintenance awards. To the contrary, I view the existing provision as properly susceptible to a more liberal interpretation than the provision of the Uniform Act which was rejected. A spouse whose age, lack of education, inexperience and want of vocational skill or training renders him or her only marginally able to support himself or herself might appropriately be held to be "incapacitated to the extent that the ability . . . to support himself or herself is materially affected. . . ."

NOTE.—Reported at 343 N.E.2d 799.