Barbara Ann MEEHAN, Appellant
(Petitioner below),

v.

William D. MEEHAN, Appellee
(Respondent below).

No. 981S233 (1–580A118).

Supreme Court of Indiana.

Sept. 8, 1981.

William L. McClellan, Greencastle, for appellant.

J. D. Calbert, Calbert & Bremer, Greencastle, for appellee.

HUNTER, Justice.

This cause is before us on the petition to transfer of William Meehan, wherein he seeks review of the Court of Appeals' opinion found at *Meehan v. Meehan*, (1981) Ind. App., 415 N.E.2d 762. There, the Court of Appeals held that the trial court had abused its discretion in modifying a child support order. We hereby grant transfer, vacate

the opinion of the Court of Appeals, and reinstate the judgment of the trial court.

Attendant to the legal proceedings which culminated in the dissolution of their marriage in 1976, Barbara and William tendered a proposed "Property Settlement Agreement" to the court. The caption "Property Settlement Agreement" was somewhat of a misnomer, for the document contained provisions regarding the proposed custody and support of the couple's four unemancipated children, as well as the marital property. The document reads in pertinent part:

### "PROPERTY SETTLEMENT AGREEMENT

"WHEREAS, the above-named parties have heretofore filed a cause for dissolution of the marriage of such parties in the Putnam Circuit Court and it being the mutual desire of the parties to resolve property rights, it is Covenanted and Agreed as follows:

"1. That the parties shall each have their personal effects and that the same have been taken by each party into his or her possession and there remain no items of personal effects to be divided.

"2. That Petitioner shall have as her absolute property all household goods, wares and appliances to make a home for the minor, dependent children of the parties.

"3. That Petitioner shall have the legal care and custody of the four (4) unemancipated children: CARLIA CHRISTINE, age 18 years, JENNIFER RUTH, age 15 years, PATRICK JAMES, age 13 years, and MEGAN KATHLEEN, age 11 years, subject to rights of visitation to the Respondent at all reasonable and proper times.

"4. That Respondent shall pay through the office of the Clerk of the Putnam Circuit Court the sum of $500.00 a month for the care and keep of said children, which sum shall be payable until Megan Kathleen has completed her high school education or is emancipated.

"5. That Respondent shall be liable for the higher educational costs of each of the aforesaid children for college and living expenses which amount to more than $100.00 each per month. If the said Megan Kathleen is enrolled in an accredited college after the termination of Respondent's liability for the $500.00 monthly support payment, Respondent shall be liable for all of said child's college and living expenses.

"6. Respondent shall pay all necessary medical, doctor, hospital, dental, optical and pharmaceutical bills for the dependent children of the parties and shall keep current the premiums on each child's life insurance coverage.

"7. That Petitioner shall have the right of occupancy of the apartment building of the parties and shall make all payments thereon, including taxes and insurance, and shall have the income therefrom.

\*　　\*　　\*　　\*　　\*　　\*

"11. That this settlement agreement is full, complete and absolute and forever shall determine the rights between these parties as to their property interests and liabilities one unto the other."

The final decree of the trial court, which embodied most of the terms agreed to by the parties, reads in its entirety:

"Comes now the parties in person the petitioner being represented by her attorney and this cause being at issue upon the petition, witnesses are sworn and evidence is heard and the Court now finds that the bonds of matrimony heretofore existing by and between the parties be and they are hereby dissolved; that the petitioner is a fit and proper person to have the care and custody of the unemancipated minor children of the parties: Carlia, age 18, Jennifer, age 15, Patrick, age 13 and Megan, age 11, and the respondent is ordered to pay into the office of the Clerk, the sum of $500.00 on the first day of each month hereafter for the support and maintenance of said minor children plus all reasonable and necessary medical, dental, optical and hospital ex-

penses and that such support payments shall continue until the youngest of such minor children, Megan is regularly enrolled in an accredited university and at which time they shall cease and he shall continue to pay such expenses as may be necessary for the further education of such minor children. The parties further agree that the petitioner shall have the right to occupy the jointly owned property of the parties located at 411 E. Seminary Street, Greencastle, Indiana until such time as the youngest of said children is emancipated and that thereafter said property shall be sold pursuant to the terms of the property settlement agreement which being examined is approved by the Court. Court further finds that the respondent shall be allowed to claim such children as exemptions on his Federal Income Tax Return and have such children with him for extended visitations. Judgment on finding."

As the Court of Appeals noted, the trial court did not expressly incorporate and merge the settlement agreement into its final decree. The Court of Appeals stated:

"At the onset we would draw attention to the somewhat incomplete form of the decree. *The statute calls for an express approval of the agreement and an express incorporation and merger of its terms into the final decree.* We find the trial court's approval of the agreement only on the face of the document; the incorporation and merger of its terms are effected by paraphrase and reference. *Nevertheless, we will consider the appeal in light of the terms of the agreement as if fully approved, incorporated, and merged into the decree. Id.* at 765 [emphasis added].

The supposition of the Court of Appeals that the settlement agreement was incorporated and merged into the decree, in the absence of express language to that effect, was erroneous.

■ It is well settled that a trial court has the discretion to accept, modify, or reject in whole or part a settlement agreement. Ind.Code § 31–1–11.5–10(b) (Burns 1980 Repl.); *Anderson v. Anderson,* (1979) Ind.App., 399 N.E.2d 391; *Waitt v. Waitt,* (1977) 172 Ind.App. 357, 360 N.E.2d 268; *Flora v. Flora,* (1975) 166 Ind.App. 620, 337 N.E.2d 846. In light of this rule, it is vital to effective and intelligent appellate review that express and unequivocal language be required to effectuate the incorporation and merger of a settlement agreement, as per Ind.Code § 31–1–11.5–10, *supra,* and case authority regarding the incorporation and merger of extraneous documents. *See, e.g., State v. Doane,* (1974) 262 Ind. 75, 311 N.E.2d 803; *Bircher v. Wasson,* (1962) 133 Ind.App. 27, 180 N.E.2d 118. Otherwise, particularly where a partial acceptance and rejection was at issue, the resolution of the question whether the trial court intended to incorporate and merge a settlement agreement or particular portions thereof would be dependent on conjecture. In our attempt to decipher trial courts' true intentions, it would be inevitable that, as here, conclusions would be reached in a manner inconsistent with the long-standing rule that a court speaks only through its official orders and entries. *Blum's Lumber and Crating, Inc. v. James,* (1972) 259 Ind. 220, 285 N.E.2d 822; *State ex rel. Taylor v. Offutt,* (1956) 235 Ind. 552, 135 N.E.2d 241.

■ Consequently, we emphasize that a trial court, when presented with a settlement agreement for its consideration, should carefully delineate in express and unequivocal terms those portions which it is incorporating and merging into its order. Absent an effective incorporation and merger, of course, a settlement agreement or its unincorporated portions is not binding on the parties. *Anderson v. Anderson, supra; Grace v. Quigg,* (1971) 150 Ind.App. 371, 276 N.E.2d 594.

While the Court of Appeals' supposition that the trial court intended to incorporate and merge the settlement agreement warrants our attention, the matter is not dispositive here. Assuming the incorporation and merger were properly effected, the reversal of the trial court's decision to modify its support order is still not warranted.

■ It is a well settled rule of contract law that the parties to an agreement cannot enforce terms which contravene statutory law. *Baltimore & O. S. R. Co. v. Hagan,* (1915) 183 Ind. 522, 109 N.E. 194; *Brokaw v. Brokaw,* (1980) Ind.App., 398 N.E.2d 1385; *McClain's Estate v. McClain,* (1962) 133 Ind.App. 645, 183 N.E.2d 842. Similarly stated, the traditional rules of contract law yield to the provisions of the Dissolution of Marriage Act, Ind.Code § 31–1–11.5–1 *et seq.* (Burns 1980 Repl.). *Anderson v. Anderson, supra.*

While the Dissolution of Marriage Act is designed to promote the amicable settlement of disputes which accompany the end of a marriage, the legislature expressly limited the contractual capacity of the parties to finally and forever settle their child support obligations. In subsection (a) of Ind. Code § 31–1–11.5–10, *supra,* the legislature provided that the parties may agree to: (1) "the *maintenance* of either of them"; (2) "the disposition of any *property* owned by either or both of them"; and (3) "the *custody* and *support* of their children." *Id.* [emphasis added]. Subsection (c) of the same statute provides:

> "The disposition of *property* settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent." *Id.* [emphasis added].

Support orders entered pursuant to settlement agreements are not subject to the mandates of subsection (c), for the legislature expressly distinguished "child support" from "property" in subsection (a) of the statute.

■ Rather, the modification of a child support order is governed solely by the unambiguous terms of Ind.Code § 31–1–11.5–17(a) (Burns 1980 Repl.), which reads in pertinent part:

> "Modification and Termination of Provisions for Maintenance, Support and Property Disposition. (a) Provisions of an order with respect to child support may be modified or revoked. Such modification

shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

This statutory standard is applicable to all support orders, *regardless of the origins of the terms.* In other words, the fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the question whether the order should subsequently be modified.

The legislature's mandate perhaps flies in the face of our visceral inclinations as jurists to rule that "a contract is a contract" and that the parties thereto are bound by their agreement. It is imperative, however, that we adhere to the letter of Ind.Code § 31–1–11.5–17(a), *supra,* for the standard enunciated therein facilitates the amicable settlement of disputes for which the Dissolution of Marriage Act is expressly designed. Ind.Code § 31–1–11.5–10, *supra.* Our courts, based on the legal obligation of the parents to support a minor child, have recognized that the terms of a support order entered pursuant to an agreement may readily be modified to reflect an increase in the amount of support and an extension of the time period in which support must be paid. *Brokaw v. Brokaw, supra; Carson v. Carson,* (1950) 120 Ind.App. 1, 89 N.E.2d 555. Cognizant that the specter of a rule whereby support agreements were unilaterally binding would cloud parties' negotiations, the legislature provided them with a mutually-applicable standard, based on equitable considerations, against which the parties can assess the likelihood that a support agreement will subsequently be modified. If our courts deviate even slightly from this delicate balance struck by the legislature, parties will be inhibited in their negotiations and the purpose of the Act will be frustrated.

Here, the Court of Appeals strayed from the mandates of Ind.Code § 31–1–11.5–17(a), *supra,* in its approach to the evidence. The Court of Appeals stated in *Meehan v. Meehan, supra:*

"The stated purpose of Ind.Code 31–1–11.5–10 is to promote the amicable settlement of disputes which attend the dissolution of a marriage. Upon approval, these agreements become part and parcel of a final decree which will receive the most deferential appellate review. Any disposition of property settled by such an agreement may not be modified by the court, in the absence of fraud, unless the agreement so provides or the parties subsequently consent. *Pactor v. Pactor,* (1979) Ind.App., 391 N.E.2d 1148; *Covalt v. Covalt* (1976) 171 Ind.App. 37, 354 N.E.2d 766. Although provisions for child support are generally terminated by the emancipation of the child, an agreement may provide otherwise. Ind.Code 31–1–11.5–17. In short, if approved by the court and incorporated and merged into the final decree, the terms of such an agreement should not be modified unless they have become *clearly unreasonable.*" 415 N.E.2d at 767 [emphasis added].

The statutory standard is not "clearly unreasonable," but rather only "unreasonable." Ind.Code § 31–1–11.5–17(a), *supra.* The Court of Appeals' prefatory statement of the standard for modification of a *property* agreement suggests that the Court of Appeals did not fully appreciate the legislature's distinct standards for the modification of property vis-a-vis support orders and agreements. That conclusion is further buttressed by the Court of Appeals' indication that agreements incorporated into a settlement order "receive the most deferential review."[1]

■ Appellate review of this case is governed solely by Ind.Code § 31–1–11.5–17(a), *supra,* and the applicable standard of review: did the trial court abuse its discretion in concluding that "changed circumstances of a substantial and continuing nature" warranted modification of the support terms? *Id.; Macauley v. Funk,* (1977) 172 Ind.App. 66, 359 N.E.2d 611; *Carlile v. Carlile,* (1975) 164 Ind.App. 615, 330 N.E.2d 349.

The standard of review to determine whether a trial court has abused its discretion in modifying a support order is well settled. We do not weigh the evidence nor judge the credibility of witnesses, but rather consider only that evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom. *Lipner v. Lipner,* (1971) 256 Ind. 151, 267 N.E.2d 393; *Carlile v. Carlile, supra.* If, from that viewpoint, there is substantial evidence to support the finding of the trial court, it will not be disturbed, even though we might have reached a different conclusion had we been the triers of fact. *Id.* Either the Court of Appeals ignored the statutory modification standard for support or it violated the standard of review, for in far less compelling circumstances, our appellate courts have found no abuse of discretion in a trial court's decision to modify terms of support.

The dissolution of Barbara and William Meehan's marriage occurred in 1976; at that time, four of their children were unemancipated. Barbara was granted custody of the children, who then ranged in age from eleven to eighteen years. William was ordered to pay $500 per month for the "support and maintenance" of said children.

In 1979, William petitioned the trial court for the modification of the support order at issue. He presented evidence that since the 1976 dissolution decree, Barbara had remarried and that her husband had assumed the bulk of costs involved in operating and maintaining the household. The evidence also revealed that Barbara was operating a small business and that during the three years, William's income had not kept pace with inflation.

On the basis of these factors alone—the relative financial resources of the custodial and non-custodial parents—the Court of Appeals in *Carlile v. Carlile, supra,* found no abuse of discretion in the trial court's decision to modify a support order. The Court of Appeals' opinion was based on the

---

1. The Court of Appeals' "deference," as indicated by the entire quotation, clearly suggests that principles of contract law rather than the statutory rules of marital dissolution controlled the Court's approach to the question at bar.

slight decrease of the non-custodial parent's income and the remarriage of the custodial parent, whose new spouse had assumed the bulk of the household operating expenses.

Beyond these factors found sufficient to justify the trial court's modification of support in *Carlile v. Carlile, supra,* other changed circumstances also buttress the trial court's modification in the instant case. The record reveals that at the time William's petition was filed, one of the four children had reached the age of emancipation and no longer resided with Barbara.[2] A second child was attending college and resided with Barbara only during the summer months. Megan, the youngest child, had decided to reside with her father William for an extended period of time; the record shows that both parents had consented and that William would incur considerable expenses in arranging living quarters for Megan and maintaining her.

With respect to Megan, the trial court made a portion of the reduction in child support conditional upon her continued residency with William. That decision was wholly consistent with *Franklin v. Franklin,* (1976) 169 Ind.App. 537, 349 N.E.2d 210. There, the Court of Appeals found no abuse of discretion in the trial court's decision to credit[3] James Franklin with ninety dollars toward support arrearages for a period of six weeks in which he had assumed physical custody of the minor child. The Court of Appeals stated in *Franklin v. Franklin, supra:*

> "Barbara further contends that it was error for the trial court to credit James with the $90 for the period of time that he supported the minor child. The purpose of the support payments is to pro-

vide for the support and maintenance of the minor child. In light of the fact that James was totally supporting the child, it was well within the court's discretion to credit James with the $90." 169 Ind.App. at 543, 349 N.E.2d at 214.

Likewise, the court's order here, as well as the settlement agreement, indicated that the monthly payments of William were for the support and maintenance of the children. Here, however, the Court of Appeals stated:

> "The apparently unforeseen circumstance of Megan's living with her father does not render the terms unreasonable, especially in light of the fact that there has been no change of custody and Megan might return to Barbara's care at any time." 415 N.E.2d at 767.

The General Assembly did not require in Ind.Code § 31–1–11.5–17, *supra,* that the "changed circumstances" be permanent in nature, but only that the change be a "continuing" one. Barbara conceded that, as per Megan's desire, the change in her residency was tentatively unlimited in duration. To say that the trial court cannot order a prospective and conditional modification of support in these circumstances clearly defeats the letter and purposes of the statute. Furthermore, it reinforces the conclusion that the equitable dictates of Ind.Code § 31–1–11.5–17(a), *supra,* regarding the modification of support orders must be strictly enforced, regardless of the origin of the terms contained therein.

In the face of the various circumstances present here, it cannot be said that the trial court's decision to modify the support order was unsupported by the evi-

2. Again, our visceral inclination might be to regard the emancipation of a child as a predictable event within the contemplation of the parties at the time they execute their settlement agreement. But, as previously stated, contract principles yield to the provisions of the Dissolution of Marriage Act; the expectations of the parties at the time of their negotiations must also be consistent with the Act. The Act clearly takes the matter of support *modification* outside the scope of the matters which the parties may negotiate. Ind.Code § 31–1–11.5– 17(a), supra; Ind.Code § 31–1–11.5–10(a) and (c), supra.

3. The capacity of the trial court to credit support payments on a retroactive basis was questioned in *Whitman v. Whitman,* (1980) Ind. App., 405 N.E.2d 608. There, the Court of Appeals indicated that credit should only be granted on a prospective basis. Without expressing opinion thereon, it is noted that the modification sought here was prospective in nature.

dence. Had the court refused to modify the order, the support payments would have become *de facto* "maintenance" for Barbara. That would have been a palatable result had the parties agreed that the sum of $500 was in part intended for Barbara's maintenance, for they were entitled to so stipulate. Ind.Code § 31–1–11.5–10(a), *supra*. There is not, however, a single shred of evidence in the record to that effect. Nonetheless, the Court of Appeals perhaps predicated its erroneous result on the conclusion that the parties had intended the payments to assist Barbara's personal maintenance. The Court of Appeals so stated that *assumption*:

> "First, with regard to the petition, we note a trial court may order the payment of maintenance only upon a finding of physical or mental incapacity which materially affects a spouse's self-supportive capabilities. Ind.Code 31–1–11.5–9(c) (Supp.1980); *Temple v. Temple*, (1975) 164 Ind.App. 215, 328 N.E.2d 227. The evidence shows Barbara was and is not incapacitated. Ind.Code 31–1–11.5–10(b) encourages maintenance agreements, however, and we assume the petition was filed with the intention of submitting and gaining approval of such an agreement." 415 N.E.2d at 766.

That supposition has nothing to support it; in fact, all evidence contradicts its validity. Since Barbara was not physically or mentally incapacitated and the parties did not stipulate to her maintenance, the Court of Appeals directly contravened the statutory prohibition of court-ordered maintenance to a spouse. Ind.Code § 31–1–11.5–9(c) (Burns 1980 Repl.); *Wilhelm v. Wilhelm*, (1979) Ind.App., 397 N.E.2d 1079; *Liszkai v. Liszkai*, (1976) 168 Ind.App. 532, 343 N.E.2d 799.

For the foregoing reasons, we hereby vacate the decision of the Court of Appeals and reinstate the judgment of the trial court.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

## ON PETITION TO TRANSFER

DeBRULER, Justice, dissenting.

The task of reviewing the trial court order modifying the terms of the original child support order was correctly approached by the First District Court of Appeals when it said:

> "On appeal, a modification of a support order is reviewable only for abuse of discretion. *Tucker v. Tucker*, (1980) Ind. App., 406 N.E.2d 321. However, it is clearly an abuse of discretion to modify a support order when there has been no showing of changed circumstances so substantial or continuing as to warrant a change in the support order. *Loeb v. Loeb*, (1969) 252 Ind. 96, 245 N.E.2d 831."

And I find that the Court of Appeals correctly evaluated the evidence tending to show changed circumstances when it said:

> "The agreement before us contains provisions which anticipated and settled the liabilities of the parties upon most of the current circumstances. Emancipation and enrollment in college have been dealt with according to its terms. The support payments of $500.00 have continued to date, as Megan has yet to graduate from high school or to become emancipated. The apparently unforeseen circumstance of Megan's living with her father does not render the terms unreasonable, especially in light of the fact that there has been no change of custody and Megan might return to Barbara's care at any time. Furthermore, William has not shown that either his or Barbara's financial condition has changed so substantially as to make the terms of the agreement unreasonable. Thus, we are constrained to conclude the trial court abused its discretion in modifying the terms of the original child support order."

At the heart of these matters is the plan of the parties to have their youngest daughter, of high school age, reside with her father, with the mother still retaining legal care and custody of her. This is a very minor and insubstantial change in conditions under the circumstances of this case which

include a specific grant to the father in the original decree of the right "to ... have such children with him for extended visitations; and a specific assignment to him of the duty to continue support payments during periods of extended visitations. The trial court's radical modification of the child support order was properly reversed by the First District as an abuse of discretion.