Rebecca A. LEPPER, Appellant,

v.

James W. LEPPER, Appellee.

No. 3–785–A–193.

Court of Appeals of Indiana,
Third District.

July 31, 1986.

Rehearing Denied Oct. 9, 1986.

Terry L. Cornelius, Fort Wayne, for appellant.

John Bullman, Fort Wayne, for appellee.

STATON, Presiding Judge.

Rebecca Lepper appeals the trial court's judgment granting James Lepper's petition for modification of custody of the parties' son. She raises the following issues:

Did the trial court abuse its discretion when it:

1.  Modified the original custody order to transfer custody of their son to James?

2.  Denied Rebecca's request for a custody dispute investigation?

3.  Modified the original child support order to require Rebecca to pay $70 per week?

4.  Denied Rebecca's request for attorney's fees?

We affirm.

Rebecca and James were married in 1967 and divorced in 1972. The divorce decree awarded custody of the parties' son to Rebecca.

In September, 1983, James petitioned for modification of custody. A hearing was held in February, 1984, after which the court denied the petition. The court ruled that James had failed to prove a change of circumstances so substantial and continuing as to make the existing custody order unreasonable.

About nine months later, in November, 1984, James again filed a petition for modification of custody. Rebecca filed a request for a custody dispute investigation, which was denied. Rebecca also filed a petition for attorney's fees, which was denied.

In June, 1985, the trial court held a hearing on James's second petition. On the question of custody, the court found that the son had, with Rebecca's consent, been living with James since October, 1984; that the son's grades, school attendance, and general demeanor had improved since he had been living with James; that Rebecca's lack of personal attention toward the son had created a strained relationship between Rebecca and the son; and that those changes were so substantial and continuing as to make the then-existing custody order unreasonable. The court also found that Rebecca was employed and had a net income of $350 per week. Finally, we note that the record also contains evidence of James's financial resources.

After making these findings the court modified the custody order, granting custody of the son to James. The court also modified the order regarding child support,

transferring the $70 per week support requirement from John to Rebecca.

## I.

### Custody

Modification of a child custody order is governed by Ind.Code 31–1–11.5–22, which allows a trial court to modify a custody order only upon "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Guidance for application of IC 31–1–11.5–22 was provided by the Indiana Supreme Court in *Poret v. Martin* (1982), Ind., 434 N.E.2d 885. Referring to IC 31–1–11.5–22, the court in *Poret* stated as follows:

> [t]he statute is nothing more than a codification of the case law of this jurisdiction. The words 'substantial and continuing,' with reference to the change of conditions are merely a rephrasing of our case law requirement that it be of a 'decisive nature'; and the requirement that it 'make the existing order unreasonable' is no different than the case law requirement that the change be 'necessary for the welfare of the child.'

*Poret,* 434 at 888.

Our standard of review for challenges to modification of a child custody order was also well stated in *Poret:*

> It is ... for the trial judge to determine whether the change has been so substantial and continuing as to make the existing order unreasonable; and upon an affirmative finding, our function is merely to determine whether or not there was substantial probative evidence supportive of that conclusion. If so, it cannot be said that the trial judge abused his discretion.
>
> Although a change in a custody order must be necessitated by a substantial change in conditions since the order was made, it does not follow that there must be such a change that it compels the change in and of itself. The change, if its effect upon the child is to be properly assessed, must be judged in the context of the whole environment. It is, after all, the effect upon the child that renders the change substantial or inconsequential; and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another. The trial judge, therefore, must consider all circumstances including those previously weighed, in order to determine, in context, the substance of the change giving rise to the review.

*Poret,* 434 N.E.2d at 888. With this standard in mind, we turn to Rebecca's argument.

Rebecca attacks the trial court's finding that a substantial and continuing change had occurred between the time of the first custody hearing, held in February, 1984, and the second hearing, held in June, 1985. Reduced to its essence, Rebecca's argument is as follows: The trial judge ruled against James on his first petition to modify custody, establishing that custody was properly with Rebecca. The circumstances had not changed from the time of the first hearing to the time of the second hearing. Therefore, the court's ruling in favor of James at the second hearing was error. Because we disagree with Rebecca's premise that circumstances had not changed, we must also reject her conclusion.

■ As stated above, our function is merely to determine whether there was substantial probative evidence to support the trial court's finding of changed circumstances. Our view of the record indicates there was such evidence. Many times during James's direct and cross-examination he referred to circumstances which had changed *since the first hearing.* For example, James testified regarding the amount of time the son spent "on the street," the discipline the son received when he lived with Rebecca, the meals prepared by Rebecca, and improvement in the son's grades since the first hearing.

■ Not surprisingly, Rebecca testified that there had not been substantial or continuing changes in these circumstances. It is the trial court's function to resolve these evidentiary conflicts; we cannot, of

course, judge the parties' credibility or weigh their testimony. And we note that it was not, as Rebecca asserts, improper for the trial court to reconsider circumstances it had considered at the first hearing. As noted above, the *Poret* court stated "[t]he trial judge ... must consider all circumstances, *including those previously weighed,* in order to determine, in context, the substance of the change giving rise to the review." *Poret,* 434 N.E.2d at 888 (emphasis added). Rebecca has not persuaded us the trial court abused its discretion by granting James's petition to modify custody.

## II.

### *Custody Dispute Investigation*

■ Rebecca next argues that the trial court erred when it denied her request for a custody dispute investigation. The decision whether to grant such a request is committed, by statute, to the trial court's discretion. IC 31–1–11.5–22(a), in relevant part, provides: "if a parent or the child's custodian so requests, the court *may* order an investigation and report concerning custodial arrangements for the child" (emphasis added).

Rebecca attempts to persuade us that once a request is made, the court *must* order an investigation. She states that, "in Dicta [sic], the Indiana Court of Appeals has held that if a proper request is filed, as was the situation in this case, then the court must order an investigation based on [IC 31–1–11.5–22(a) ]," citing *In re Guardianship of Phillips* (1978), 178 Ind.App. 220, 383 N.E.2d 1056. Appellant's Brief at 17.

First, we note the inconsistency in Rebecca's statement: if the *Phillips* court's statement was dictum, then the statement obviously could not constitute any part of its holding. Second, our reading of *Phillips* fails to disclose any indication, even in dictum, that a court must automatically order a custody investigation upon a party's request. *Phillips* held only that, absent any indication in the record that a party made a statutorily required request for an investigation, the court was not required to order one. From this it does not follow that upon receipt of such a request the court is required to grant it; such a result would ignore the discretion given to the trial judge by the legislature in its use of the word "may." Rebecca's argument notwithstanding, our standard remains the familiar "abuse of discretion" standard.

■ Our examination of the record reveals no abuse of the trial court's discretion. A custody dispute investigation report was prepared for the original February, 1984, custody hearing. The report was a thorough thirty-five page analysis of all circumstances pertaining to the custody arrangement. Rebecca has not persuaded us that the trial court abused its discretion by declining her invitation to require a second report.

## III.

### *Child Support*

■ Rebecca also attacks the trial court's modification of child support. She argues that the court erred when it failed to consider the four factors in IC 31–1–11.-5–12(a).[1]

We first note that change of custody from one parent to another is, by itself, a substantial and continuing change of circumstances which justifies a modification of child support. *Rice v. Rice* (1984), Ind. App., 460 N.E.2d 1228, 1231. This estab-

---

**1.** IC 31–1–11.5–12(a) provides: In an action pursuant to section 3(a) or (b) [31–1–11.5–3(a) or (b) ], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(1) the financial resources of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved;

(3) Physical or mental condition of the child and his educational needs; and

(4) Financial resources and needs of the noncustodial parent.

lished, we turn to consideration of the amount of the support awarded.

Indiana statutes govern both the establishment of a child support order and the modification of a previously established child support order. Establishment of an order (as in a marital dissolution proceeding) is governed by IC 31-1-11.5-12(a), the text of which is set forth in footnote 1 (and which we will refer to as Section 12). Section 12 requires that a trial judge consider the four factors contained in that section when the judge establishes a child support award.

Modification of a previously established child support order is governed by IC 31-1-11.5-17(a) (which we will refer to as Section 17). Section 17, in relevant part, states as follows: "Provisions of an order with respect to child support may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Thus, Section 17 does not explicitly require a trial judge, when modifying a support order, to consider the four factors set forth in Section 12. In light of Rebecca's challenge, then, we must decide whether a trial court's disregard of the four factors of Section 12 when modifying a previously established child support order is reversible error.

Indiana decisions regarding the standard of review for modification of a child support order have been less than uniform; however, they start with a common premise: on appeal such a modification is reviewable only for an abuse of discretion. *E.g., Brummett v. Brummett* (1984), Ind. App., 472 N.E.2d 616, 617. This standard was explained by the *Brummett* court as follows: "It is only where the result reached is clearly against the logic and effects of circumstances before the court that an abuse of discretion will be found." *Id.*

Most courts also agree that a trial judge must consider the "totality of circumstances" surrounding the child support order. *E.g., Payson v. Payson* (1982), Ind.App.,

442 N.E.2d 1123, 1127. At this point, however, there is a divergence in the approach taken by the appellate courts. Some decisions from the Indiana Court of Appeals have construed "totality of circumstances" to mean nothing more than the *general* circumstances surrounding the support order. These courts have not required the trial judge to consider the four factors of Section 12, and the decisions typically contain no reference at all to Section 12. *E.g., Payson,* 442 N.E.2d at 1127 (evidence of parties' general financial situation, and of father's lack of job security, held sufficient to support modification).

Other decisions from our court of appeals have construed the "totality of circumstances" requirement to mean that the trial judge *must* consider the four factors of Section 12. *E.g., Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321, 323 (citing Section 12 and discussing each of its four factors). Thus, while the latter cases state that a trial judge's modification of a child support order is reviewed only for an abuse of discretion (that is, the order will be reversed only if the *result reached* is against the logic and effects of the circumstances), these courts do inquire into the trial judge's decision-making *methodology,* at least to the extent of verifying that the judge considered the four factors of Section 12.

Finally, some courts have reviewed the modification of a child support order using the traditional "sufficiency of evidence" standard. Under this approach, the appellate court cannot weigh the evidence or judge the credibility of witnesses, but must consider only the evidence and reasonable inferences most favorable to the trial court's judgment. If, from that perspective, there is substantial evidence to support the finding of the trial court, its judgment will be affirmed. This is the approach used by our Indiana Supreme Court in *Meehan v. Meehan* (1981), Ind., 425 N.E.2d 157, to which we now turn.

In *Meehan,* the parties had entered into a settlement agreement upon their divorce in 1976. The settlement agreement estab-

lished the father's child support obligation. In 1979, the father petitioned to modify his support obligation, presenting evidence of changed conditions.[2] The trial court granted the father's petition.

The mother appealed, claiming that the trial court had abused its discretion by modifying the decree, which she argued was an incorporated settlement between the parties. The court of appeals reversed, finding that the settlement agreement had been incorporated into the dissolution decree "by paraphrase and reference" and that, therefore, it could only be modified by a showing that the terms had become "clearly unreasonable." *Meehan*, 425 N.E.2d at 159, 161.

The supreme court vacated the court of appeals' decision and reinstated the trial court's modification of the support order. The supreme court's decision was of two parts. First, the court held that a trial court's incorporation of a settlement agreement into the dissolution decree must be by express and unequivocal language to be effective. *Id.* at 159. Second, the court found that, even assuming the incorporation were effective, "the modification of a child support order is governed *solely* by the unambiguous terms of [Section 17]...." *Id.* at 160 (emphasis added).

Thus, the supreme court in *Meehan* reviewed the modification of a child support order with no reference whatever to Section 12. Nonetheless, the court did cite with apparent approval *Carlile v. Carlile* (1975), 164 Ind.App. 615, 330 N.E.2d 349, which had specifically referred to Section 12 while evaluating the "totality of circumstances." *Carlile*, 330 N.E.2d at 350; *Meehan*, 425 N.E.2d at 161. And, the *Meehan* Court did consider two of the four Section 12 factors (the financial resources of the custodial and non-custodial parents). The

court indicated that a trial judge's consideration of these two factors alone would be sufficient to survive appellate scrutiny when it stated: "On the basis of these factors alone—the relative financial resources of the custodial and non-custodial parents—the Court of Appeals in *Carlile v. Carlile, supra,* found no abuse of discretion in the trial court's decision to modify a support order." *Meehan*, 425 N.E.2d at 161.

From our review of these cases and statutes, we arrive at the following conclusion: while the four factors of Section 12 may be relevant to modification of a child support order, and while a trial court therefore may appropriately consider them, a trial court does not necessarily commit reversible error by failing to expressly consider the four factors when modifying a child support order. While there must be substantial evidence to support the trial court's judgment, this evidence may, but need not necessarily, comprise the four factors of Section 12.[3]

Following our supreme court's decision in *Meehan*, we hold that there is substantial evidence in the record to support the trial court's judgment. In the present case, as in *Meehan*, the record contains evidence of both parties' financial resources. Also in the present case, and again as in *Meehan*, a child had been living with the father (the non-custodial parent) with the mother's consent—a factor considered relevant by the *Meehan* court.

Finally, we note that Rebecca does not challenge the support order on its merits; that is, she makes no argument that the award is beyond her means, is inequitable, or is more than necessary to meet the son's needs. In sum, she has not persuaded us that the trial court erred in modifying the support award. Since there is substantial

---

2. The father presented evidence that, since the 1976 dissolution decree, the mother had remarried and her new husband had assumed the cost of most of their living expenses. The mother had started a new business. The father's income, however, had not kept pace with inflation. One of the four children had become emancipated and no longer lived with the moth-

er. Another child lived with the mother only during the summer months. The youngest child had decided to live with the father with both parents' consent. *Meehan*, 425 N.E.2d at 162.

3. For example, in *Meehan* our supreme court considered factors beyond the parents' financial resources (see footnote 2 above).

evidence to support the trial court's judgment, we will not disturb this judgment on appeal.

### IV.

#### *Attorney's Fees*

■ Rebecca's final argument attacks the trial court's denial of her request for attorney's fees. She concedes, as she must, that once again such a decision rests in the discretion of the trial court. *See, e.g., Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279, 1288–89.

■ Rebecca's position on this issue, in summary, is this: because the trial court had the power to consider evidence concerning attorney's fees, and if the court deemed it appropriate, award attorney fees to Rebecca, the trial court abused its discretion by not considering such evidence and awarding attorney's fees. Rebecca's conclusion does not follow from her premise. Her argument here is thus similar to the one she advanced, and we rejected, concerning the custody dispute investigation.

Rebecca does attempt to bring substance to her argument by stating, "it would appear that the courts should encourage the award of attorney's fees in situations such as this, where the Defendant has filed a Petition for Modification of Custody ten months after he was denied a modification on a prior order." We do not take issue with Rebecca's statement of policy; we do, however, decline to substitute our judgment for that of the trial court.

Affirmed.

HOFFMAN, J., concurs in result with opinion.

GARRARD, J., dissents in part with opinion.

HOFFMAN, Judge, concurring in result.

■ I concur but only in the result of III *Child Support.* The sole argument on appeal and in the Motion to Correct Errors was that the trial court did not consider all the factors required by IND.CODE § 31–1–11.5–12.

**I agree that he is not required to do so.** However, I do not reach the question of whether there was evidence to support the support order.

GARRARD, Judge, dissenting in part.

I concur in parts I, II and IV of the majority opinion.

On the issue of child support I would reverse because there was not sufficient evidence adduced at trial to enable the court to establish a reasonable support allowance to be paid by the mother. In reaching that determination I find it unnecessary to determine whether IC 31–1–11.5–12 provides a litany which must be chanted in a section 17 proceeding.

I agree that the change in custody constitutes a substantial change of circumstances justifying a modification of support. Whether or not IC 31–1–11.5–12 technically applies, to be reasonable the new award must consider the needs of the child and the resources of the parents.

The record before us, while disclosing the mother's income, is silent concerning the needs of the child and the father's income. The determination that the mother should pay $70 per week is thus necessarily arbitrary and not sustained by the evidence. The majority would apparently avoid this failure by its assertion that the mother has not claimed she could not afford this amount. She has, however, challenged the propriety of the order and, fairly taken, her claim is that the amount ordered was in error in the absence of any evidence of the father's income or the child's needs.

I would therefore reverse as to the award of child support and remand for a hearing thereon.